607 So.2d 853 (1992)
Jimmy Wayne DAVIS, Sr., Plaintiff-Appellant,
v.
Crow BURLINGAME, et al., Defendants-Appellees.
No. 24139-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
Rehearing Denied November 25, 1992.
Writ Denied February 5, 1993.
*854 Charles W. Seaman, Natchitoches, for plaintiff-appellant, Jimmy Wayne Davis, Sr.
Hayes, Harkey, Smith, Cascio & Mullens by Bruce M. Mintz, Monroe, for defendant-appellee, Polymer Raymond Industries Inc. & St. Paul Fire & Marine Ins. Co.
Brittain, Williams, McGlathery, Passman & Sylvester by Joseph Payne Williams, Natchitoches, for defendant-appellee, intervenor Employers Ins. of Wausau.
Before MARVIN, LINDSAY and BROWN, JJ.
BROWN, Judge.
This products liability action arose out of an accident occurring on May 24, 1985, in which the plaintiff, Jimmy Wayne Davis, Sr. (Davis), was struck in the right eye by a strap used to tie down a tarpaulin. On April 9, 1986, this litigation was instituted against Crow Burlingame, retailer, and Radiator Specialty Company (Radiator Specialty), a manufacturer of tarpaulin straps. Polymer Raymond Industries (Polymer Raymond), the actual manufacturer of the strap involved in this incident and its insurer, St. Paul Fire and Marine Insurance Company (St. Paul) were added as defendants on January 4, 1989. Thereafter, plaintiff's claims as to all defendants were settled and voluntarily dismissed with the exception of Polymer Raymond and its insurer, St. Paul. Following trial, the court granted a peremptory exception of prescription filed by Polymer Raymond and its insurer. From this ruling plaintiff appeals. We affirm.

FACTS
At the time of trial, plaintiff was thirtyeight years old and had been employed as a truck driver for over nineteen years. When the accident occurred, he was employed by H & F Enterprises (H & F). Davis' duties as a truck driver for H & F included making out-of-state trips. On May 24, 1985, Davis drove to Stephens, Arkansas, to pick up a load of roofing materials and was pulling a forty-five foot long, eight foot wide trailer. Davis arrived at Elk Roofing in Stephens, Arkansas, in the early afternoon. Roofing shingles were loaded by forklift onto the trailer. It was Davis's responsibility to secure and protect the load of shingles prior to leaving the plant.
Davis covered the load with a tarpaulin which was tied down with rubber straps. These straps had an S-hook on each end. To secure the tarpaulin, the hook portion of one end of the strap is placed in a grommet (reinforced hole) in the tarp, the strap is stretched and the hook on the other end is placed either in another grommet or on a part of the trailer.
Just prior to the accident, Davis was holding the tarp with his left hand and believing one end was hooked in the tarp he stretched the strap with his right hand. *855 The tension caused the hook to unexpectedly come loose and Davis was struck in his right eye. The force and severity of the blow almost knocked Davis unconscious and ultimately cost him all but the peripheral vision in his right eye. Davis received workers compensation benefits and the compensation insurer intervened. All parties agreed that if plaintiff was successful in this action, the compensation carrier would be reimbursed by preference from the proceeds.
At the conclusion of plaintiff's case, defendants Polymer Raymond and St. Paul filed a peremptory exception of prescription. The exception alleged that the accident occurred on May 24, 1985, that the original petition, naming as defendants only Crow Burlingame and Radiator Specialty, was filed on April 9, 1986, and that Polymer Raymond and St. Paul were not named as defendants until January 18, 1989, when plaintiff's second supplemental and amending petition was filed.

DISCUSSION
Louisiana Civil Code Article 3492 provides:
"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."
The one year prescriptive period set forth in Article 3492 may be interrupted as to all solidary obligors if suit is brought timely against one solidary obligor. See Louisiana Civil Code Article 1799. Jurisprudence applying Article 1799 has established that a suit filed timely against one defendant who is found not liable will not interrupt prescription against another defendant who was not timely sued. Vicknair v. Hibernia Building Corporation, 479 So.2d 904 (La.1985), on remand, 482 So.2d 95 (La.App. 4th Cir.1986); Catalano v. Walgreen's Corporation, 470 So.2d 904 (La.App. 4th Cir.1985); Gauthier v. Southern Farm Bureau Casualty Insurance Company, 422 So.2d 627 (La.App. 3d Cir. 1982), writ denied, 427 So.2d 869 (La.1983); Gibson v. Exxon Corporation, 360 So.2d 230 (La.App. 1st Cir.1978), writ denied, 362 So.2d 575 (La.1978).
The party claiming solidary liability between two or more parties bears the burden of proving it. Lowe v. Rivers, 448 So.2d 848 (La.App.2d Cir.1984); O'Brien v. Delta Gas Inc., 426 So.2d 262 (La.App. 4th Cir.1983), writ denied, 433 So.2d 163 (La. 1983).
Davis argues, that as a retailer, Crow Burlingame occupies the same status as a manufacturer and is therefore liable for his injuries. Thus, arguing that Crow Burlingame and defendants are solidarily obligated, the timely filing of suit against Crow Burlingame served to interrupt prescription against Polymer Raymond. As a result of a settlement with plaintiff, Crow Burlingame was not present at trial. The dispositive issue is whether plaintiff established that Crow Burlingame was solidarily bound with the manufacturer for the damage caused by the alleged defective product.
An analysis of the liability of non-manufacturer sellers is found in Rutherford v. Coca-Cola Bottling Co., 501 So.2d 1082 (La.App.2d Cir.1987). The court in Rutherford discussed several cases illustrating the particular circumstances where liability is imposed upon non-manufacturer sellers.
The general rule is that a seller of a product manufactured by another is not liable for damages sustained by a consumer by reason of a latent defect in the product if the defect was not known or reasonably discoverable by the seller. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974). Exceptions to this general rule have been found in several instances. In Spillers, manufacturer's status was not imputed to a small retailer of used trucks who in no way held himself out as the manufacturer of the product he sold.
In Penn v. Inferno Manufacturing Corp., 199 So.2d 210 (La.App. 1st Cir.1967), writ denied, 251 La. 27, 202 So.2d 649 (La. 1967), the court found a non-manufacturer seller liable for a defective sight glass. The seller had placed its label on the product. The basis for this liability was the *856 common law rule of imputing knowledge of the manufacturer to the non-manufacturer seller when the seller labels the goods or holds them out as his own.
In Travelers Indemnity Company v. Sears Roebuck & Company, 256 So.2d 321 (La.App. 1st Cir.1971), the court held Sears' liability for a defective hammer was the same as the manufacturer's. Sears held the product out as its own and the size, volume and merchandising practices of Sears put Sears in the class of professional vendors presumed to know of the defects in its products. The court noted that the relationship between a retailer like Sears and its manufacturers justified the imputation to Sears of knowledge of the hammer's defects. Sears ordered the hammers to their specifications from the manufacturer and the hammer had the Sears' name and trademark on the handle.
The court in Cobb v. Insured Lloyds, 387 So.2d 13 (La.App. 3d Cir.1980), writ denied, 394 So.2d 615 (La.1980), held the seller liable in solido with the manufacturer for the defect in a revolver that accidentally discharged and caused injuries to the plaintiffs. In finding the seller liable, the court noted that the seller's name was forged onto the revolver, the seller was the sole distributor of the revolver and had responsibility for providing operating instructions and warranty repair.
In Rutherford v. Coca-Cola Bottling Co., supra, the court treated the local distributor as a manufacturer in assessing liability for injuries caused by a can of Coke which had a roach in it. Although the local company was not the canner (it was solely a bottler), the court said that the bottling company should be regarded as a manufacturer of all of the Coke products it distributes because it is in fact a manufacturer and holds itself out as such.
Sears was found liable for injuries caused by a defectively designed attic stairway in Landry v. State Farm Fire and Casualty Co., 504 So.2d 171 (La.App. 3d Cir.1987). The defective stairway was fabricated by Wel-Bilt Products Co. However, the catalog from which the stairway was purchased was a Sears catalog; the product was listed as a Sears product with a Sears model number; the instruction sheet was titled Sears Roebuck & Co. Model 7390; the included parts list referenced Sears parts numbers; and the catalog contained a guarantee by Sears.
"Professional vendor" was explained by the court in Nelton v. Astro-Lounger Manufacturing Company, Inc., 542 So.2d 128 (La.App. 1st Cir.1989). In analyzing Chappuis v. Sears Roebuck and Co., 358 So.2d 926 (La.1978), and Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748 (La. 1987), the court stated, "(A) professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality such that the courts are justified in treating the retailer like a manufacturer. We do not believe that the supreme court in Rowell intended to expand the scope of Chappuis to impose manufacturer liability on all retailers who are simply in the business of selling a product". Nelton, 542 So.2d at 132. The court found that the non-manufacturer seller of the defective sofa bed was not a professional vendor and was thus not liable to the plaintiff; the seller did not hold out the product as its own and it was not established that the seller knew or should have known that the product was defective.
In the instant case, Davis's claim asserts that the metal S-hook was defectively designed. Experts on both sides testified that the hook probably snagged on the tarp and when pulled, came loose striking Davis. Plaintiff's expert believed that if the end of the hook was rounded, it would be less likely to snag. The technology to smooth the edges existed and was being used in the manufacturing of coat hangers; however, this process would increase the cost to produce the S-hooks from two to four cents each.
The evidence established that Crow Burlingame purchased these tarp straps from BATCO. H & F bought the straps from Crow Burlingame in boxes containing 50 rubber straps and 100 metal S-hooks. H & F would place the metal hooks onto the straps.
*857 Plaintiff did not establish that the retailer, Crow Burlingame, either knew or should have known that the tarpaulin strap was defective or that Crow Burlingame was a "professional vendor". Therefore, the general rule that a non-manufacturer seller is not liable for defects absent actual or constructive knowledge applies, unless Crow Burlingame fits within one of the jurisprudential exceptions set forth in the above cited cases.
The trial court found that the tarp straps sold by Crow Burlingame were generic in nature and contained nothing indicating them to be a product of Crow Burlingame. The judge noted that the straps were purchased in bulk and were distributed by a warehouse to the local store and that Crow Burlingame's only involvement with the straps was to offer them for sale and occasionally insert a hook into a pre-cut opening. The judge noted further that no instructions or warnings were provided to Crow Burlingame and that they added nothing to the product. Based on the evidence and testimony, the trial court found that plaintiff failed to establish any liability on the part of Crow Burlingame and that timely suit against Crow Burlingame did not interrupt prescription against defendants Polymer Raymond and St. Paul, who were not sued until more than three years after the cause of action arose.
We agree that plaintiff did not carry its burden of proof. As the trial court found, the evidence and testimony did not establish any liability on the part of Crow Burlingame, the retailer. Since the only timely sued party was not found liable, there can be no solidary liability between it and the defendants, who were not timely sued.
Plaintiff did not argue to the trial court nor to this court that prescription was interrupted due to lack of knowledge of the identity of the actual manufacturer of the straps. We note that on January 6, 1987, plaintiff first amended its petition to include BATCO as a defendant, but did not amend again until January 8, 1989, to include Polymer Raymond and its insurer as defendants. Consequently, plaintiff did not show that prescription was suspended by the doctrine of contra non valentem.
For the reasons set forth above, the judgment of the trial court is AFFIRMED, costs to be borne by appellant.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, HIGHTOWER, VICTORY and BROWN, JJ.
Rehearing denied.