865 So.2d 242 (2004)
Irma THORNTON, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 38,025-CA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
*243 Scott D. Wilson, Baton Rouge, for Appellant.
Cook, Yancey, King and Galloway by S. Price Barker, Rebecca L. Castillo, Shreveport, for Appellee.
Before STEWART, GASKINS and LOLLEY, JJ.
STEWART, J.
Irma Thornton filed suit against her employer, the City of Shreveport (hereinafter "the City"), for conversion and breach of contract relating to alleged inaccuracies regarding her years of service and fund contributions in the City's retirement system records. The City responded with an exception of prescription that was sustained by the trial court after a hearing. On appeal, Thornton argues that the trial court erred in ruling that her claims had prescribed, specifically by not applying the doctrine of contra non valentem. For the following reasons, we affirm the trial court's judgment.

FACTS
Thornton was employed by the City from July 1979 until July 22, 1982, when her employment was terminated. As a *244 result of a complaint filed by Thornton with the United States Equal Opportunity Employment Commission, a settlement agreement was reached in July 1983, whereby Thornton's employment was reinstated "without loss of seniority." Over nineteen years later, on October 22, 2002, Thornton filed the instant suit claiming that the City's records do not accurately reflect her contributions to the retirement fund nor her years of service for retirement eligibility "without loss of seniority."
In the early part of 2002, Thornton checked with the City to determine her retirement status and learned that her years of service for retirement purposes did not date back to her initial employment beginning in July 1979. The City's retirement records reflected only 19 years of service, whereas Thornton believed that she should be credited for 23 years of service.
A letter from the City's director of finance dated March 7, 2002, informed Thornton that the City's records showed that she received a refund of her contributions to the retirement system in the amount of $2,862.42 on August 1, 1982, following her employment termination. As a result of this refund, Thornton lost her time in the retirement system from July 1979 through July 1982. The letter explained that even though Thornton was reinstated with seniority, she could not regain her time for retirement purposes without buying back that time. Although the City's pension records and accounting records indicated that the refund check had been issued, the City did not have the canceled check from twenty years ago.
In her petition, Thornton alleged that the City refused to adjust her retirement account to properly reflect her contributions or give her credit for years of employment "without loss of seniority." Alternatively, she asserted that the City refused to pay her the amount of her contributions plus employer contributions and accrued interest. Based on these allegations, Thornton asserted a cause of action for conversion based on the City allegedly depriving her of funds contributed by her. Thornton also asserted a cause of action for breach of contract based on the City's alleged breach of the settlement agreement due to its failure to credit her with years of service prior to the date of the settlement agreement. Thornton asserted that this failure was contrary to the City's fiduciary duties regarding its administration of the retirement plan and care for the members' contributions.
On July 16, 2003, the City filed a peremptory exception of prescription asserting that Thornton had one year to bring her conversion claim and ten years to bring her breach of contract claim. Since the settlement agreement was made in June 1983, and the petition not filed until October 2002, Thornton's claims appeared to be prescribed. At the hearing on the exception, the City presented testimony to establish that Thornton had received a refund of her contributions when her employment was terminated and that she had not bought back that time when she resumed employment with the City.
The City established that beginning in August 1984, the pay stubs for the City's employees included year-to-date pension contributions and pension amount totals. However, the pay stubs did not reflect years of service credited toward retirement. Elizabeth Washington, the City's director of finance, testified about a payroll processing form from December 1985, which pertained to Thornton's employment. As explained by Washington, the payroll form indicated that Thornton contributed $1,008.72 to the retirement fund for 1985 and that her employment-to-date *245 retirement contributions totaled only $2,404.75. This information would have been available to Thornton on her payroll stubs. Washington also testified about a form from the City's pension office dated August 1, 1982, which was used to generate checks for refunds. This form, which was introduced into evidence, included a listing for Thornton in the amount of $2,862.42. In addition, Washington testified that Thornton's retirement refund payment from 1982 was reflected in a microfiche check register, a copy of which was introduced into evidence. On cross, Washington admitted that the City had no other evidence to show that Thornton negotiated a refund check and that there was no letter in the City's records of Thornton ever requesting a refund of her retirement contribution.
The City also presented testimony from Phillis Copp, who served as pension manager from December 1996 through April 2000. Copp testified that she performed a refund buy-back calculation for Thornton in August 1997. Although Copp did not have a specific recollection of speaking with Thornton about the calculation, Copp testified that she would not have performed the calculation without Thornton having asked her to do it. The "Refund BuyBack" form was introduced into evidence and showed that Thornton was refunded $2,862.42 on August 1, 1982, and that she would have to buy back 3.061 years at 7% interest for a total amount of $7,943.36 to credit her retirement account with the years of employment prior to her termination on July 23, 1982. Copp also testified about a computer screen printout of benefits accrual dates for Thornton which showed that her leave accrual began on her initial date of hire, July 1, 1979, but that her retirement plan credits began on June 12, 1983. Copp explained that the discrepancy indicated that some event interrupted Thornton's contributions to the retirement plan.
In opposition to the exception of prescription, Thornton argued that she had a personal right to seek modification or correction of her retirement account to accurately reflect the amount of contributions made and that this right was subject to a 10 year prescriptive period that did not begin running until she became vested in her retirement. In addition, Thornton argued that if her claims for conversion and breach of contract were found to date back to the time of the alleged issuance of the refund check or the settlement agreement, then the doctrine of contra non valentem suspended the running of prescription until February 2002, when she first learned of the discrepancy in the City's records.
At the hearing on the exception of prescription, Thornton testified that she never elected to take a refund of her retirement funds when she was terminated, and that she never received any refund check. Also, she did not recall asking Copp to prepare a refund buy-back calculation. Thornton insisted that she learned only a year ago that the City believed she had received a refund and that she was not given retirement credit for her full years of employment. Thornton introduced the certificate of appreciation she received from the City for twenty years of service on November 18, 1999, to show that the City considered her employed since 1979.
At the conclusion of the hearing, the trial court stated that it was convinced Thornton was paid her retirement refund when it was due and that she knew about it. The court also stated that when Thornton was rehired in 1983, she should have checked to see whether she was reinstated and given credit for retirement purposes. Accordingly, the trial court concluded that Thornton's claims were prescribed.

*246 DISCUSSION
On appeal, Thornton raises the single issue of whether the doctrine of contra non valentem should be applied in this case to prevent the running of prescription. The doctrine of contra non valentem is based on the equitable notion that no one is required to exercise a right when it is impossible for him to do so. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992); Martin v. Comm-Care Corp., 37,600 (La.App.2d Cir.10/16/03), 859 So.2d 217. The doctrine is an exception to the general rule of prescription. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206; Hughes v. Olin Corp., 37,404 (La. App.2d Cir.10/03/03), 856 So.2d 222. It applies only in "exceptional circumstances." La. C.C. art. 3467, Official Revision Comment (d); Renfroe v. State ex rel. Dept. of Transp. and Dev., XXXX-XXXX (La.2/26/02), 809 So.2d 947. In fact, the Louisiana Supreme Court has recognized the following four specific situations to which the doctrine of contra non valentem applies so as to prevent the running of liberative prescription:
1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions;
2. Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
4. Where the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiff's ignorance is not induced by the defendant.
Renfroe, supra.
Thornton asserts that the third and fourth situations listed above apply in this case. For the third category of contra non valentem to apply, the defendant's conduct must have prevented the plaintiff from availing himself of his cause of action. In other words, the cause of action accrued, but the plaintiff was unable to enforce it due to some reason external of his own will. Wimberly, supra; Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979). Under the fourth category, referred to as the discovery rule, prescription begins to run when the injured party discovers or should have discovered the facts upon which his cause of action is based. Wimberly, supra; Griffin v. Kinberger, 507 So.2d 821 (La.1987). For the fourth category to apply, the plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect; a plaintiff is deemed to know what he could have learned by reasonable diligence. Renfroe, supra; Corsey, supra.
Thornton argues that before she checked her retirement status in 2002, she had every reason to believe that the City was standing by the agreement it made in 1983 to reinstate her "without loss of seniority." She notes that in 1999, she received a certificate of appreciation for twenty years of service, and she points out that the City was unable to produce a cancelled check to show she actually received a refund, that the City had no evidence showing it actually mailed the refund check to her, and that the City had no letter from her requesting a refund. Thus, she argues that the record shows she did not know and could not reasonably have known about the City's failure to reinstate her with no loss of seniority as agreed in 1983.
Evidence regarding the City's payment of a retirement contribution refund to Thornton was introduced at the hearing *247 on the exception of prescription without objection by either party. Even though such evidence went to the ultimate issue before the trial court on Thornton's claims, such evidence was also germane to the City's claim of prescription. At trial on a peremptory exception pleaded prior to trial, other than the exception of no cause of action, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. See La. C.C.P. art. 931. When evidence is introduced at a hearing on a exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. Perez v. Trahant, 2000-2372 (La.App. 1st Cir.12/28/01), 806 So.2d 110, writs denied, XXXX-XXXX, XXXX-XXXX (La.8/30/02), 823 So.2d 953.
In ruling that Thornton's claims had prescribed, the trial court made the factual finding that the "plaintiff was paid her retirement refund when it was due, that she knew about it." The trial court also concluded that Thornton should have checked to make sure that she was reinstated and given retirement credit when rehired in 1983. From our review of the record, we cannot conclude that the trial court's factual findings are manifestly erroneous. These findings were undoubtedly based, at least in part, on credibility determinations made by the trial court after hearing the witnesses, including Thornton. The manifest error standard accords great deference to the fact finder's credibility determinations as only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Where a fact finder's conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Pope v. Prunty, 37,395 (La.App.2d Cir.8/20/03), 852 So.2d 1213, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137.
From its ruling, it is apparent that the trial court disbelieved Thornton's testimony that she did not receive the refund check and credited the testimony and evidence presented by the City which established that a refund check was issued. Even though no canceled check was produced, the trial court had before it evidence of both a check request and a check issuance reflected on the City's internal documents. While the City could not show that Thornton had requested payment of her retirement benefits in 1982, there was evidence that she had requested a buy-back calculation in 1997. That evidence, by its very nature, contradicted Thornton's testimony that she did not learn of the City's allegation of a refund until years after the buy-back calculation was performed. The trial court resolved the conflict in the evidence in favor of the City, and resolving a conflict in the evidence is a matter falling squarely within the trial court's broad discretion.
Thornton's claim of breach of contract was subject to a ten year prescriptive period under La. C.C. art. 3499, and her claim for conversion was subject to a one year prescriptive period under La. C.C. art. 3492. Both causes of action arose when Thornton was rehired by the City in 1983, the time at which the breach of the settlement agreement and the conversion of funds would have occurred as a result of the City's alleged failure to reinstate her "without loss of seniority." As such, the trial court was correct in ruling that both causes of action are prescribed. Moreover, we do not find that the trial court erred in failing to apply the doctrine of contra non valentem. Neither the settlement *248 agreement by which Thornton was rehired "without loss of seniority" nor the certificate of appreciation introduced by Thornton were acts that prevented her from availing herself of any cause of action she might have had against the City. Moreover, any cause of action pertaining to her reinstatement in the retirement system with credit for her prior years of employment was reasonably knowable by the plaintiff, who with exercise of due diligence could have learned the status of her retirement system participation when re-hired.
We note Thornton's argument that she alleged current wrongful conduct by the City due to its refusal to adjust her retirement account to reflect contributions made during the early years of her employment or to credit her for her full years of service. However, this alleged wrongful conduct hinges upon the claims for breach of contract and conversion, which have prescribed. Moreover, the trial court's finding that the City paid Thornton a retirement refund means that her claims regarding the inaccuracies in her retirement account have been shown to be without merit.

CONCLUSION
For the reasons set forth above, the trial court's judgment sustaining the exception of prescription is hereby affirmed at appellant's costs.
AFFIRMED.