CARAWAY, J.
11After a lamp caused a fire in an insured’s home in 2003, the insurer timely filed suit against the retail seller of the lamp under the Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq. (the “Act”), seeking to recover the amounts tendered to the insured. The seller had placed a label on the lamp identifying the seller as a distributor of the product. No other party was identified by the labeling information. Later, in 2007, plaintiff named the manufacturer of the lamp and its insurer as additional defendants, after discovering the identity of the manufacturer which was revealed by the seller. The manufacturer’s insurer defended the suit with the exception of prescription. The trial court granted the exception, and this appeal followed. Finding that the doctrine of contra non valentem applies due to the plaintiffs inability to learn the identity of the lamp’s manufacturer, we reverse.

Facts

Under a policy of homeowner’s insurance, Allstate Insurance Company (“Allstate”) paid Lucinda Thornton for the damage to her home resulting from a fire on September 28, 2003. The fire was allegedly caused by a lamp Thornton purchased from Fred’s Stores of Tennessee, Inc. (“Fred’s”) which contained labeling, “made in China, distributed by Fred’s.” As Thornton’s subrogee, Allstate instituted suit on March 15, 2004, against Fred’s seeking to recover the amount paid to Thornton under the policy. In the petition, which was grounded in claims of negligence and strict liability, Allstate alleged that the “subject lamp was manufactured |?and/or marketed and/or sold by” Fred’s,
Ultimately, four years after the fire, Colony Insurance Company (“Colony”), as the insurer of L & L Import Enterprises, Inc., f/k/a Van Troxel International, Inc. (“L & L Import”), became involved in the suit. L & L Import was alleged to be the manufacturer of the lamp. In defense, Colony pled the exception of prescription which was granted by the trial court leading to this appeal.
The timing relating to the plea of prescription for the pertinent matters which followed the March 2004 filing of the action against Fred’s is shown as follows:
• May 19, 2004 — Allstate propounded interrogatories and requests for production of documents to Fred’s.
• November 22, 2004 — Fred’s answered the interrogatories and indicated that it did not manufacture or distribute the lamp. In response to specific questions regarding the identity of the manufacturer, distributor or assembler of the lamp, Fred’s denied any knowledge.
• April 24, 2006 — Fred’s first identified Van Troxel International, Inc. as the distributor/vendor of the lamp and provided the address of the company as well as evidence of the identity of its insurer. Fred’s also indicated its belief that the lamp was manufactured by Chain Run, a company in China, but gave no address or information for service of process.
• April 13, 2007 — Allstate filed its first supplemental and amending petition, naming L & L Import as the manufacturer of the lamp, and two | .¡insurance companies alleged to be L <& L Import’s insurers.[1]
• October 26, 2007 — Colony answered the petition as the correct party defendant insurer.
*175 • March 13, 2008 — Colony filed the exception of prescription.
• June 17, 2008 — Allstate opposed the motion urging that the doctrine of contra non valentem applied because L & L Import concealed its connection with the lamp.
• April 15, 2008 — Fred’s filed a motion for summary judgment, but before the hearing, after a compromise and settlement between Fred’s and Allstate, the trial court signed an order dismissing Fred’s from the suit, reserving all rights against L & L Import.
In granting Colony’s exception of prescription, the trial court expressed its reasons for judgment, follows:
Based on the claims and the facts established in the record, the Court concludes that Fred’s Stores of Tennessee, Inc. is a non-manufacturing seller as defined by La. R.S. 9:2800.53, et seq. and, as such, it cannot be liable under the circumstances of this case. Furthermore, and fundamentally, there can be no solidary liability between Fred’s and L & L Enterprises, Inc. and/or Van Troxel International, Inc. The supplemental petition filed 3-1/2 years after the September 28, 2003 fire does not relate back to the original petition and such claims are untimely and have prescribed. The Court believes that Davis v. Burlingame, 24,139 (La.App. 2d Cir.10/28/92), 607 So.2d 853 is applicable. The court finds the doctrine of Contra Non Valentem inapplicable.
Allstate appeals this ruling.

Exception of Prescription

The plea of prescription must be specifically pleaded, and may not be 14supplied by the court. La. C.C.P. art. 927(B); Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261; Holmes v. LSU/E. A. Conway Medical Center, 43,662 (La.App. 2d Cir.10/22/08), 997 So.2d 605. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id. On the trial of the prescription exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the objection of prescription must be based upon the facts alleged in the petition, and all allegations thereof are accepted as true. Louisiana Employers-Managed Ins. Co. v. Litchfield, 01-0123 (La.App. 1st Cir.12/28/01), 805 So.2d 386.
Delictual actions, including claims under the Act, are subject to a liberative prescriptive period of one year, which commences to run from the date the injury is sustained. La. C.C. art. 3492; Griffin v. Kinberger, 507 So.2d 821 (La.1987); Netherland v. Ethicon, Inc., 35,229 (La.App. 2d Cir.4/5/02), 813 So.2d 1254, writ denied, 02-1213 (La.6/21/02), 819 So.2d 339. When a party has sufficient information to incite curiosity, to excite attention or to put a reasonably minded person on guard and call for inquiry, he or she has the constructive knowledge necessary to start the running of prescription. Netherland v. Ethicon, supra.

Discussion

The Act establishes the exclusive theories of liability for | r,manufacturers for *176 damage caused by their products. La. R.S. 9:2800.52. The broad definition for “manufacturer” is set forth in Section 2800.53(1), in pertinent part, as follows:
(1) “Manufacturer” means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. “Manufacturing a product” means producing, making, fabricating, constructing, designing, re-manufacturing, reconditioning or refurbishing a product. “Manufacturer” also means:
(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
This definition therefore allows for multiple parties to be responsible under the Act for a defective product as a “manufacturer” of the product.
Allstate argues that its products liability claim against Colony’s insured, L & L Import, has not prescribed under two theories. First, under the Act’s multifaceted definition of manufacturer, both Fred’s and L & L Import are alleged manufacturers/co-tortfeasors — Fred’s under Section 2800.53(l)(a) and L & L Import under Section 2800.53(1) or (l)(b).[2] Therefore, appellant asserts that the initial timely suit against Fred’s interrupted prescription regarding the claim against L & L Import according to the principle of La. C.C. art. 2324(C). Second, Allstate asserts the doctrine of contra non valentem as an interruption of the applicable | fiprescription.
A remarkably similar case is Penn v. Inferno Mfg. Corp., 199 So.2d 210 (La.App. 1st Cir.1967), writ denied, 251 La. 27, 202 So.2d 649 (1967). Penn was an early products liability case involving the manufacturer and seller of a defective sight glass for a testing device which exploded and injured an individual in an oil field accident. There, in the context of a plea of prescription, the court found a gauge distributor (Inferno) solidarily liable with the glass manufacturer (Corning) for a defect in the sight glass. The gauge distributor had labeled the gauge as its own. The plaintiff first sued the gauge distributor believing it to be the manufacturer of the defective glass. The gauge distributor answered the suit alleging that it did not manufacturer the glass and named the manufacturer after the applicable prescriptive period had run. Plaintiff amended its petition some three years after the accident, to add as defendants the glass manufacturer, which was never served, and its insurer. After trial, the insurer raised an exception of prescription urging that the manufacturer was not solidarily liable with the gauge distributor.
In adopting plaintiffs arguments verbatim as its own opinion on the plea of prescription, the court affirmed the trial court’s overruling of the prescription exception. The plaintiffs argument included the same two arguments now presented by Allstate. Regarding the argument of con *177 tra non valentem, the First Circuit’s opinion cited the principle that “[a] defendant who either intentionally or unknowingly succeeds in concealing from a creditor his cause of action cannot be allowed to reap the benefit of|7his own wrong.” Id. at 219, citing Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916). The ruling then states:
Under the circumstances we submit that prescription in this instance should be held interrupted since Inferno misled plaintiff and appellee, John Penn, by labeling the sight glasses as their- own. It is not difficult to understand why Mr. Penn or his attorneys should be misled into believing that the sight glasses were made by Inferno when they had Inferno’s name stamped upon them, when they were packaged in a box with Inferno’s label upon them, when they were purchased with invoices showing them as Inferno’s sight glasses, and when they were a component part of a gauge manufactured by Inferno. In fact, even the name Inferno Manufacturing Corporation infers that Inferno was the manufacturer and no one had any reason to doubt that Inferno was the manufacturer of the sight glasses when their name was prominently displayed on the gauge, glasses, labels and invoices.
Nowhere on any invoice or gauge or glass was any information available that the sight glasses were made by Corning. In fact, the first knowledge that appellee had that Corning was involved was the filing of the third party petition by Inferno setting forth that Corning had manufactured the sight glasses. It should be remembered that Corning denied the manufacturing of these sight glasses and strenuously cross-examined Mr. Blanchard, the President of Inferno, in an attempt to establish that Inferno had manufactured the glasses in Inferno’s molds.
We submit that the law should not allow the manufacturer of a product to mislead the public by the improper labeling of the product. In this instance, Mr. Penn should not be deprived of his right of action against INA (the insurer of Corning) by the tolling of the statute of prescription when, through concealment and deliberate mislabeling, he was led to believe that Inferno was the manufacturer of the product which caused him injury.
Id. at 219, 220.
More recent jurisprudence affirms the doctrine of contra non valentem as a Louisiana jurisprudential doctrine under which prescription may be suspended. Carter v. Haygood, supra. Moreover, it is an equitable doctrine of Roman origin, with roots in both civil and common law, and is notably at odds with the public policy favoring certainty underlying the | adoctrine of prescription. Id. There are four recognized instances in which contra non valentem is applied to prevent the running of prescription:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiffs ignorance is not induced by the defendant.
The third category is implicated where an innocent plaintiff has been lulled into a course of inaction in the enforce *178 ment of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights. This category applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. Carter v. Haygood, supra. Under the fourth category, referred to as the discovery rule, prescription begins to run when the injured party discovers or should have discovered the facts upon which his cause of action is based. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206; Thornton v. City of Shreveport, 38,025 (La.App. 2d Cir.1/28/04), 865 So.2d 242, writ denied, 04-0469 (La.4/8/04), 870 So.2d 273. For the fourth category to apply, the plaintiffs ignorance of his cause of action cannot be attributable to his own willfulness or neglect; a plaintiff is deemed to know what he could have learned by reasonable diligence. Thornton v. City of Shreveport, supra.
|3Under the Act, a party who does not actually manufacture and produce the defective product can nevertheless be liable as a “manufacturer” for labeling the product as his own. La. R.S. 9:2800.53(l)(a). When the product is placed into the stream of commerce where the end purchaser may rely on the integrity of the labeling party, the Act places responsibility on the labeler for damages from a defect. With this legislative focus on the purchaser’s expectations and understanding of the product from its label, the consequence of the actual manufacturer’s choice of not labeling the product which it produced is that the purchaser is denied information which the Act deems significant. An unlabeled product prevents the purchaser from considering the integrity of the manufacturer at the time of purchase and, as in the present case, frustrates the purchaser’s efforts in later bringing suit if the product is defective and causes damage.
The arguments of Allstate regarding the asserted interruption of prescription concern the lamp’s labeling, or the lack thereof. Since Fred’s is no longer a party to this suit, we will pretermit the issue of whether Fred’s label made Fred’s a “manufacturer” under the Act and a co-tortfeasor. Instead, we determine that Allstate has established that the doctrine of contra non valentem is applicable because of its inability to learn of L & L Import’s identity as the manufacturer of the unlabeled product. The action of concealment in this case is L & L Import’s failure to label its alleged product. While the Act imposes no duty of labeling and we are unaware of any other statute requiring labeling, the failure to label the product did not allow Allstate to readily ascertain L & L Import’s identity. Therefore, under 1 ipboth the third and fourth categories of contra non valentem as listed above, Allstate’s ignorance of its course of action cannot be attributable to its own neglect. Within a year of first receiving information regarding L & L Import and its insurers, Allstate took steps in filing its amended suit which brought Colony into the action.
Finally, Colony argues in its brief that Allstate’s failure to have appealed the judgments dismissing L & L Import on the basis of insufficiency of service renders moot Allstate’s appeal. While citing Louisiana’s direct act statute, La. R.S. 22:1269, Colony overlooks the statute’s express provision that an action may be brought against the insurer alone when service of citation or other process cannot be made on the insured. La. R.S. 22:1269(B)(l)(c). Accordingly, this argument has no merit.

Conclusion

For the foregoing reasons, the judgment granting Colony’s exception of prescription *179 is reversed. Costs of this appeal are assessed to Colony. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.

. On July 16, 2008, Allstate filed an amended petition renaming L & L Import as a defen *175 dant in the suit after it was earlier dismissed from the suit without prejudice due to insufficiency of service of process. Subsequently L & L Import was dismissed again from the suit on, December 22, 2008, after the trial court granted the exception of improper service.

. Significantly, for purposes of these assertions in Allstate's defense against the claim of prescription, Allstate must prove Fred’s status as a manufacturer/co-torlfeasor to establish the interruption of prescription principle regarding suits against co-tortfeasors. On the other hand, Allstate's assertion that L & L Import was a manufacturer represents the merits of its claim which need not be proven peremptorily in defense of the exception of prescription since such exception only concerns the timeliness of the claim. Thus, Colony’s insistence throughout its appellate brief that L & L Import was not a manufacturer under the Act, but only a wholesaler of the lamp, goes to the merits of Allstate's claim, not the timeliness thereof.