62 So.3d 861 (2011)
James P. WELLS, Jr., Plaintiff-Appellant
v.
Donald J. ZADECK, Zadeck Energy Group, Inc., Oleum Operating Company, L.C., T.M. Hopkins Operating, Inc. and T.M. Hopkins, Inc., Defendants-Appellees.
No. 46,138-CA.
Court of Appeal of Louisiana, Second Circuit.
April 13, 2011.
Rehearing Denied May 12, 2011.
*863 Downer, Huguet & Wilhite, by Philip E. Downer, III, M. Amy Burford McCartney, Michael A. Marino, Shreveport, LA, for Appellant.
Wiener, Weiss & Madison, by Frank H. Spruiell, Jr., for Appellees, Donald Zadeck and Zadeck Energy Group, Inc.
Shuey Smith, LLC, by John Miller Shuey, Jr., Shreveport, LA, for Appellees, Oleum Operating Co., LC, T.M. Hopkins Operating, Inc., and T.M. Hopkins, Inc.
Before BROWN, PEATROSS, and MOORE, JJ.
PEATROSS, J.
Plaintiff, James P. Wells, Jr., appeals from the judgment of the trial court granting Defendants', Donald J. Zadeck and Zadeck Energy Group, Inc.'s ("Zadeck"), peremptory exception of prescription. For the reasons stated herein, we affirm.[1]

FACTS
Plaintiff, James P. Wells, Jr. ("Wells"), is the son of James Wells and Olean Speights Wells. On September 17, 1949, James and Olean Wells executed a deed in favor of Paul and Cleo Holmes conveying certain property (hereinafter referred to as "the Property") in DeSoto Parish, Louisiana. The Wellses reserved unto themselves an undivided one-half interest in and to all of the oil, gas and other minerals on, in or under the Property. Shortly thereafter, James and Olean Wells divorced; and, pursuant to a community property settlement, Ms. Wells retained ownership of an undivided one-fourth mineral interest in the Property.
On June 5, 1954, Ms. Wells executed a mineral lease in favor of Z.T. Gallion, pursuant to which a well was drilled on the Property. The well resulted in a dry hole and the lease was released on June 26, 1958. A few years later, Zadeck and/or their predecessors-in-interest acquired oil, gas and mineral leases covering the Property, as well as other land. Specifically, Zadeck acquired a lease executed by the Holmeses in favor of Parnell, Inc., covering lessors' "entire undivided one-half interest in and to" the Property. When Zadeck conducted a search of the public records in connection with the leasing of the Property, the one-fourth interest of Ms. Wells was not discovered by Zadeck and Ms. Wells was not provided notice of the mineral activity on the Property. The Property was then included in the Paluxy Sand Unit U, a unit in which the Shirey Well No. 1 achieved production in January 1965.[2]
Ms. Wells died in 2002.[3] On December 19, 2008, Wells was contacted by a landman *864 concerning the mineral interest. Wells inquired into the matter and discovered the long history of production. On December 18, 2009, Wells filed suit against Donald J. Zadeck, Zadeck Energy Group, Inc., Oleum Operating Co., L.C., T.M. Hopkins Operating, Inc., and T.M. Hopkins, Inc., for their failure to tender unto him and his predecessors-in-interest (Ms. Wells) their rightful share of proceeds from the production. Zadeck responded by filing an exception of prescription, urging that Wells' claims against it prescribed ten years from Zadeck's cessation of involvement (September 3, 1994) with the Shirey Well No. 1. In response to Zadeck's exception, Wells argued that, prior to December 18, 2008, he and his mother had no knowledge of any production; and, therefore, the doctrine of contra non valentem suspended the tolling of prescription. Following a hearing on the exception, on May 11, 2010, the trial court granted Zadeck's peremptory exception of prescription and dismissed with prejudice the claims of Wells against Zadeck. This appeal ensued.

DISCUSSION
A trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. Marin v. Exxon Mobil Corp., 09-2368 (La.10/19/10), 48 So.3d 234; Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261.
The party raising the exception of prescription ordinarily bears the burden of proof at the trial of the peremptory exception. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502; Alexander v. Fulco, 39,293 (La.App.2d Cir.2/25/05), 895 So.2d 668, writ denied, 05-0781 (La.5/6/05), 901 So.2d 1107. When, however, the plaintiff's petition reveals on its face that the prescriptive period has expired, the burden shifts to the plaintiff to show why the claim has not prescribed. Campo, supra; Alexander, supra; Netherland v. Ethicon, Inc., 35,229 (La.App.2d Cir.4/5/02), 813 So.2d 1254, writ denied, 02-1213 (La.6/21/02), 819 So.2d 339.
Wells filed suit against Zadeck on December 18, 2009. Zadeck filed a peremptory exception of prescription that evidenced its cessation of ownership and operation of the Shirey Well No. 1 on September 3, 1994. Since neither party disputed the applicability of the ten-year liberative prescriptive period set forth in La. C.C. art. 3499, Wells' claim against Zadeck had facially prescribed. The burden, therefore, shifted to Wells to demonstrate that the running of prescription had been suspended or interrupted.
Although La. C.C. art. 3467 provides that "prescription runs against all persons unless exception is established by legislation," Louisiana jurisprudence has long recognized the doctrine of contra non valentem as an additional means of suspending the running of prescription when the circumstances of a case fall within one of four categories. Marin, supra; Plaquemines Parish Com'n Council v. Delta Development Co., Inc., 502 So.2d 1034 (La. 1987); Edwards v. Alexander, 42,000 (La. App.2d Cir.6/6/07), 960 So.2d 336, writ denied, 07-1317 (La.9/28/07), 964 So.2d 371. The four factual situations in which the doctrine of contra non valentem may apply are as follows:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with *865 the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.
Marin, supra; Netherland, supra.
It is the fourth category of contra non valentem, commonly referred to as the "discovery rule," which is at issue in the case sub judice. The discovery rule is only applied in extreme circumstances and when the plaintiff's ignorance of his cause of action is not attributable to his own willfulness or neglect. Marin, supra; Davis v. Johnson, 45,200 (La.App.2d Cir.5/5/10), 36 So.3d 439. In Marin, supra, the supreme court recognized that "lower courts have interpreted the fourth category of contra non valentem too broadly" and that it is to apply only in "exceptional circumstances." Further, the supreme court in Marin reiterated that "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." Marin, supra, citing Renfroe v. State ex rel. DOTD, 01-1646 (La.2/26/02), 809 So.2d 947; Matthews v. Sun Exploration and Production Co., 521 So.2d 1192 (La.App. 2d Cir.1988). When prescription begins to run depends on the reasonableness of plaintiff's action or inaction. Marin, supra; Campo, supra; Landry v. Blaise, Inc., 02-0822 (La.App. 4th Cir. 10/23/02), 829 So.2d 661. Stated another way, to determine when a plaintiff knew or should have reasonably known of his cause of action, the plaintiff will be deemed to know what he could have learned through reasonable diligence. Renfroe, supra.
In the case sub judice, the primary issue is whether the trial court correctly concluded that Wells' claims had prescribed and that contra non valentem did not operate to suspend the tolling of prescription. The trial court's written reasons for judgment indicate that it granted Zadeck's peremptory exception of prescription on two bases: 1) as a result of Wells' mother's failure to monitor her mineral interests, which in effect is a finding that the Wells family (including Plaintiff) failed to exercise reasonable diligence regarding the mineral activity on the Property, and 2) Wells' failure to prove that some reason external to his own will led to his or his mother's ignorance of the fact that they had a cause of action they could pursue. Mindful that we review the judgment of the trial court and not the reasons for judgment, we perceive no manifest error in the ultimate conclusion that Wells failed to demonstrate that the doctrine of contra non valentem should apply in the present case and, therefore, that Wells' claims against Zadeck are prescribed. See Mayard v. Mayard, 44,465 (La.App.2d Cir.7/1/09), 16 So.3d 466.
As previously explained, in order to avail himself of the fourth category of contra non valentem, Wells must show that his ignorance of his cause of action cannot be attributable to his own willfulness or neglect. Renfroe, supra. He is deemed to know what he could have learned by reasonable diligence. Id. It is this principle on which Zadeck relies in arguing that Ms. Wells and her son failed to monitor the mineral interest. Zadeck suggests that a call to the surface owners or inquiries to neighbors could have put the Wellses on notice that there was drilling in the area. Zadeck further points out that Ms. Wells participated in leasing her mineral interest *866 back in the 1950s and was well aware of the process of exploration, leasing and production of minerals. Wells testified at the hearing on the exception of prescription that the first he ever learned of the mineral interest owned by his mother was December 19, 2008, when he was contacted by a landman. According to Wells, he and his mother never discussed the mineral interest and he was unaware of her ever receiving any royalty payments for the production therefrom. When presented with the oil and gas lease executed by his mother in 1954, and released in 1958, Wells testified that he did not recall his mother executing the lease. Significantly, however, Wells acknowledged that his mother executed the mineral lease of 1954 and later released that lease, which indicates Ms. Wells' knowledge of her ownership rights and her familiarity with the leasing and drilling processes. Despite this knowledge, Wells was unable to produce any evidence that his mother had kept abreast of leasing and drilling activity regarding her mineral interests over the next 43 years.
Wells argues on appeal that neither he nor his mother knew or should have known that the mineral interests were being produced since Zadeck failed to provide the statutorily required notice of forced pooling and failed to tender royalty payments unto him or his mother. In support of his argument, plaintiff cites Amoco Production Company v. Texaco, Inc., 02-240 (La. App. 3d Cir.1/29/03), 838 So.2d 821, writs denied, 03-1102 and 1104 (La.6/6/03), 845 So.2d 1096. While we recognize some factual similarities between the instant case and Amoco, the present case boils down to one of proof, or the lack thereof. The present record is devoid of evidence of any efforts on the part of Ms. Wells to keep abreast of the mineral activity on the Property. We decline to create a brightline rule regarding what actions might be considered reasonably diligent in protecting such interests; however, some reasonable inquiry or action is required. In the present case, as stated, Wells was unable to demonstrate that his mother exercised any diligence to protect her mineral interests. Again, Ms. Wells was familiar with exploration, leasing and drilling activity and yet she remained silent and inactive with regard to her interest for more than 40 years. Simply stated, Ms. Wells' ignorance of a potential claim was attributable to her own neglect, and such is attributable to Wells. Considering the particular facts of this case, we do not find manifest error in the trial court's granting of Zadeck's peremptory exception of prescription.
Finally, we note that, in his first assignment of error, Wells argues that the trial court improperly required that he prove culpability on the part of Zadeck. Wells urges that the added requirement of having to prove culpability amounted to a misapplication of legal principles because he was seeking relief under the fourth category of contra non valentem, which specifically excludes the requirement that the defendant induced the ignorance of the plaintiff. Wells asserts, therefore, that the findings of the trial court should be subject to de novo review. We disagree. While the trial court did mention Wells' inability to prove culpability on the part of Zadeck, we find that this reference did not constitute a requisite that Wells prove culpability in order to prevail; rather, it was merely a component of the trial court's analysis in considering whether prescription may have been tolled.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining Defendants', Donald J. Zadeck and Zadeck Energy Group, Inc.'s, peremptory exception of prescription *867 is affirmed. Costs of this appeal are assessed to Plaintiff, James P. Wells, Jr.
AFFIRMED.
BROWN, Chief Judge, dissents with written reasons.
BROWN, Chief Judge, dissenting.
The primary issue before us is whether plaintiff's mother, ergo plaintiff, knew or should have known about defendant's production of plaintiff's unleased mineral interests. The majority's holding would have us impute constructive knowledge of defendant's production to Mrs. Wells as a result of her failure to monitor her mineral interests. This holding is neither rooted in equity nor justice. Noting Zadeck's admission that Mrs. Wells' one-fourth interest was overlooked, how is it equitable to punish someone for their failure to monitor their unleased mineral interests, when the law places no such burden on them, while rewarding a company for its failure to perform an affirmative duty created by law-i.e., to provide notice of forced pooling, issue reports to owners of unleased interests, and tender payment to unleased mineral interest owners within 180 days? See La. R.S. 30:10 and 30:103.1, which state in pertinent parts:
La. R.S. 30:10 A
(1)(a) All orders requiring pooling shall be made after notice and hearing. They shall be upon terms and conditions that are just and reasonable and that will afford the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense....
(3) If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
La. R.S. 30:103.1
Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
(1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
(2) After establishment of production from the unit well, quarterly reports which shall contain the following:
(a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
(b) The price received from any purchaser of unit production.
(c) Quarterly operating costs and expenses.
(d) Any additional funds expended to enhance or restore the production of the unit well.
In Amoco, supra, Amoco, a major oil and gas corporation, subleased five of its leaseholds in Vermilion Parish. The contract executed by the parties contained a "reassignment clause," whereby the defendants, one of which was IMC, were not to allow the cancellation of any of the leases without providing notice to Amoco at least 60 days in advance. In 1976 the defendants *868 allowed one of the leases to expire, and in 1981 the defendants released then nonproducing acreage from the other four leases. The defendants subsequently took new leases in their names on these properties. In 1993 Amoco hired a landman to audit its properties being operated by outside companies such as the defendants. This audit led to the discovery of the lease cancellations 18 and 13 years prior. Summarizing the parties' arguments and its conclusion, the Third Circuit stated:
IMC argues Amoco should have discovered the lease cancellations earlier because they were duly recorded in the Vermilion Parish public records. IMC cites a number of cases in support of this contention.... In all of these cases, the court found the plaintiff had a duty to investigate the public records because [plaintiff] was clearly placed on notice of a possible injury. Amoco argues these cases do not apply to an unsuspecting plaintiff, who has no notice of the potential claim as a direct result of defendant's failure to provide information it was required by contract to furnish. We find Amoco's argument persuasive in this instance.... (Emphasis added) (Citations omitted).
Amoco, supra at 830-31.
Noting the factual similarities of the Amoco case, the majority nonetheless disregards its applicability in the present matter and, without any qualifying distinguishment, merely states that "the present case boils down to one of proof, or the lack thereof." While I recognize that the record proves, and Zadeck does not dispute, that Zadeck and/or its predecessors-in-interest failed to furnish Mrs. Wells with the information and payments it was obligated by law to furnish her, the majority finds plaintiff's inability to demonstrate any actions his mother may have performed to monitor her mineral interests fatal. Based upon this reasoning, proof that a defendant failed to perform its affirmative duties is of no consequence unless the plaintiff can also prove that she performed her nonexistent duty of monitoring her mineral interests.
The majority contends that Mrs. Wells could have learned of the mineral production through the exercise of reasonable diligence. According to the majority, Mrs. Wells could have communicated with neighbors of the property or called her successor-in-title on the phone. Plaintiff's testimony, however, reveals that Mrs. Wells was a single mother living in a different parish than the Property at the time the Shirey Well No. 1 began production. She had no car and barely scraped by on a minimum wage job. Regardless, the majority apparently finds that reasonable diligence entails tracking down and cold calling potential neighbors and possible successors-in-title to a property sold more than 16 years prior, to find out if, unbeknownst to her, an oil and gas company was usurping her mineral interests. To place such a onerous burden on her to, basically, do the job that Zadeck and their predecessors-in-interest should have done, without her having some prior notification of a possible injury, is unreasonable.
Further, I take issue with the majority's repeated characterization of Mrs. Wells as someone who had familiarity with the exploration, leasing, and drilling processes as a result of her one-time execution of a mineral lease. Not only did she execute the lease contemporaneously with Mr. Wells, which could indicate her reliance on his mineral leasing knowledge, but the particular well drilled as a result of the lease was actually drilled on the Property. Meanwhile, in the present case, the completed well was not on the 120 acres in which Mrs. Wells had an interest, but was located on a different tract within the drilling *869 unit. To try to equate the knowledge needed to execute a mineral lease where a well will be drilled on the actual property you have an interest in, to being familiar with the complexities involved in a forced pooled unit, is quite an overreach.
The equitable nature of the circumstances in each case determines whether contra non valentem is applicable. See Matthews, supra. In the case sub judice, the totality of the circumstances demonstrates that Zadeck, a sophisticated oil and gas company, failed to perform its affirmative duty to, inter alia, tender unto plaintiff and his predecessors-in-interest their pro rata share of the production proceeds. Mrs. Wells, an unsuspecting plaintiff, had no knowledge that her unleased mineral interests were being produced. Her ignorance was not the result of her being negligent, as the law places no duty on an unleased mineral interest owner to scour the public records or cold call sucessors-in-title to make sure that their mineral interests are not being usurped. Accordingly, I find that the majority was erroneous in its conclusion that, as a result of Mrs. Wells' failure to monitor her mineral interests, plaintiff could not avail himself of the jurisprudential exception of contra non valentem.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, PEATROSS, and MOORE, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.
NOTES
[1] Additional defendants who continued mineral production after Zadeck ceased its operation and ownership remain in the lawsuit and are not involved in this appeal.
[2] Shirey Well No. 1 is not located on the Property. Per appellant's brief, the SONRIS website reflects that production from the Shirey Well continued until September 2006, and it is still listed as "active-producing."
[3] Wells states in his original brief that he is the owner of the mineral interests at issue. Zadeck's original brief states, however, that Wells is not the owner of the mineral interests at issue since there has been no succession filed following Ms. Wells' death. Additionally, Zadeck points out that Wells has a sister and she has not joined the lawsuit. In between the filing of Wells' original brief and his reply brief, two affidavits of death and heirship were filed in the Conveyance Records of DeSoto Parish, Louisiana, stating that Ms. Wells died intestate on May 21, 2002, and that she had two children, one of which is plaintiff, James P. Wells, Jr.