501 So.2d 1082 (1987)
Edward Ray RUTHERFORD, Plaintiff-Appellant,
v.
COLA-COLA BOTTLING COMPANY OF SHREVEPORT, INC. and Gulf States Canners, Inc., Defendants-Appellees.
No. 18413-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
C. William Gerhardt & Associates by John C. Turnage, Shreveport, for plaintiff-appellant.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for defendants-appellees.
Before HALL, C.J., and MARVIN and SEXTON, JJ.
HALL, Chief Judge.
Plaintiff, Edward Ray Rutherford, filed this products liability action on August 4, 1983 against Coca-Cola Bottling Company of Shreveport, Inc., seeking to recover damages for injuries he sustained on September 9, 1982 after drinking a contaminated soft drink. In his original petition, plaintiff alleged that while he was a patient in Highland Hospital in Shreveport, a nurse purchased a bottle of Coke for him which contained parts of a large bug believed to have been a roach. Plaintiff's petition alleged Coca-Cola of Shreveport was negligent in bottling and distributing to the hospital a soft drink containing a deleterious substance. An answer filed by Coca-Cola of Shreveport on November 8, 1983 admitted that it bottled Coca-Cola products and distributed them to Highland Hospital but denied any negligence on its part.
Supplemental interrogatories were propounded by plaintiff on May 23, 1985. Answers to the interrogatories filed on September 30, 1985 revealed that although Coca-Cola of Shreveport bottled Coke in *1083 bottles, the canned Coca-Cola products it distributed throughout the Shreveport area were purchased from Gulf States Canners, Inc. of Clinton, Mississippi. On October 30, 1985 plaintiff filed an amending petition adding Gulf States as a defendant and referring to the container of the Coke as a can rather than a bottle as previously alleged.
Gulf States subsequently filed a peremptory exception of prescription contending plaintiff's claim against it had prescribed because it was not named as a defendant until more than one year after the incident giving rise to the claim occurred. Coca-Cola of Shreveport filed a motion for summary judgment alleging that it did not can Coca-Cola or any other soft drink and was not liable to plaintiff for injuries arising out of the consumption of a Coke canned by another party. Both the exception and the motion were sustained by the trial court and plaintiff's suit was dismissed as to both defendants. From this judgment, the plaintiff appealed.
On appeal, plaintiff specifies the following errors:
1. The trial court erred in not allowing the plaintiff an opportunity to amend his petition because the trial court did not have discretion to refuse an opportunity to amend where amendment could result in relief for the plaintiff against the defendants.
2. The trial court erred in releasing the defendants without considering choice of law principles calling for application of Mississippi substantive law to this case.
3. The trial court erred in failing to recognize that the defendants were solidarily liable under Louisiana products liability law.
4. The trial court erred in not finding that a principal-agency relationship existed between the defendants and as such notice upon one of the defendants interrupted prescription as to the other defendant.
5. The trial court erred in failing to apply the principles of contra non valentem to the facts of this case.
The dispositive issue is whether Coca-Cola of Shreveport is solidarily bound with Gulf States for the alleged damage caused by the deleterious substance contained in the can of Coke. Stated more precisely, should a local bottler of Coke in bottles who distributes not only its bottled products but also canned Coca-Cola products as well, be regarded as a manufacturer of all Coca-Cola products it distributes? If so, the local bottler would be solidarily liable with the actual canner and the timely suit filed against one solidary obligor (Coca-Cola of Shreveport) interrupted prescription as to the other solidary obligor (Gulf States). We hold that the defendants would be solidarily liable for damages caused by consumption of a deleterious substance in a can of Coke canned by Gulf States and distributed by Coca-Cola of Shreveport, and reverse the judgment of the district court.
Several cases have dealt with the issue of whether a non-manufacturer seller should be subjected to the same liability as the actual manufacturer of a defective product. As a general rule, a seller of a product manufactured by another is not liable for damages sustained by a consumer by reason of a latent defect in the product if the defect was not known to or reasonably discoverable by the seller. In Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974), plaintiff instituted a products liability action after he was injured when a truck tire wheel exploded. Plaintiff bought the truck from Reliable Motors, which had had the truck modified by G & S Manufacturing. The court held G & S liable as a manufacturer but found Reliable Motors was not liable because it was a retailer, not a manufacturer. There was no evidence that Reliable Motors knew or should have known that the wheel and rim were defective. Louisiana courts have consistently applied the provisions of LSA-C.C. Art. 2531 in limiting the liability of a seller who knew not *1084 the vices of the thing and did not occupy the position of a manufacturer, to a restoration of the purchase price and expenses of the sale.
However, other cases have found a non-manufacturer seller liable under particular circumstances. In Penn v. Inferno Manufacturing Corp., 199 So.2d 210 (La. 1967), plaintiff filed a products liability suit after he was injured during an explosion of sight glass which had been installed on a fluid level gauge of a high pressure separator unit. Inferno had sold the sight glass which exploded and held itself out as the manufacturer of the sight glass, although the glass itself was manufactured by Corning Glass Works. Inferno's label was on the product. The court applied the common law rule which allowed knowledge of the manufacturer to be imputed to a seller or dealer who was not the manufacturer when the seller or dealer had labeled the goods as his own or had in some way held the goods out to be manufactured by him. Finding Inferno to be liable as a manufacturer, the court held that the filing of the suit against Inferno interrupted prescription against Corning Glass Works which had been added as a defendant after the one year prescriptive period had run.
In Travelers Indemnity Company v. Sears Roebuck & Company, 256 So.2d 321 (La.App. 1st Cir.1971), suit was brought against the seller of a defective stove which had caused a fire in plaintiffs' home. The plaintiffs had purchased the stove from Sears and subsequent repairs were made by Sears and its employees. Although Sears did not manufacture the stove, the court held it occupied the position of a manufacturer because the stove contained a trade name used by Sears, there was no indication the stove was manufactured by someone else, and plaintiffs dealt with Sears and relied upon the service and advice of its agents, both in the original purchase and subsequent repair calls.
In Media Production Consultants, Inc. v. Mercedez-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), the purchaser of an imported Mercedez-Benz automobile filed a redhibition action against Mercedez-Benz of North America, Inc., the American distributor which supplied the automobile to the dealer. The maker of the vehicle was a foreign corporation not qualified to do business in the United States. The defendant had assumed total responsibility for marketing the cars in the United States and for selling, servicing, and establishing franchise dealerships. Its name appeared upon the Dealers Claims Policies and Procedures Manual, the owner's service policy, and the owner's automobile manual. It operated a vehicle distribution center and inspected, adjusted, and prepared the automobiles for placement in the hands of dealers for retail sale.
The court held that insofar as the American consumer was concerned the defendant occupied the position of a manufacturer. Therefore, the liability of the defendant to the American consumer was equivalent to that of the manufacturer of a defective vehicle.
In Chappuis v. Sears Roebuck & Company, 358 So.2d 926 (La.1978), plaintiff brought a products liability action after a fragment of steel ricocheted from a hammer he was using causing injury to his eye. He brought the suit against the retailer (Sears) and the manufacturer of the hammer (Vaughan and Bushnell). The court found the hammer was unreasonably dangerous to normal use and the failure of the manufacturer to inform the user of the danger of using a chipped hammer was fault under LSA-C.C. Art. 2315.
The court further held the responsibility of Sears was the same as that of the manufacturer. First, Sears held the product out to the public as its own. Second, the size, volume, and merchandising practices of Sears brought Sears within the class of professional vendors who are presumed to know of the defects in their wares. The court distinguished Spillers v. Montgomery Ward, supra, where the defendant was a relatively small truck retailer, noting that the relationship between a retailer like Sears and its manufacturers, with its capabilities for controlling the quality of its *1085 merchandise, justified the imputation to Sears of knowledge of its defects.
The hammers were manufactured by Vaughan and Bushnell, from whom Sears ordered hammers to their specifications, with Sears' name and their "Craftsman" trademark on the handle.
In Cobb v. Insured Lloyds, 387 So.2d 13 (La.App. 3d Cir.1980), writ denied, 394 So.2d 615 (La.1980), plaintiffs brought suit to recover damages for injuries they sustained as a result of the accidental discharge of a revolver. The gun was manufactured in Germany by J.P. Sauer & Sohn in December, 1974 and shipped to Hawes Firearm Company in California, Sauer's sole distributor in the United States at the time. The name of both the manufacturer and the distributor appeared on the gun. Under an agreement between the two companies, Hawes was responsible for providing operating instructions and warranty repair.
In holding Hawes liable in solido with Sauer for the defect in the revolver, the court noted Hawes' name was forged onto the revolver, it was the sole distributor of the revolver having responsibility for both instruction and warranty repair, and insofar as the American consumer was concerned, it occupied the position of a manufacturer.
In Jones v. P.K. Smith Chevrolet-Olds, Inc., 444 So.2d 1372 (La.App. 2d Cir.1984), a products liability suit was instituted by a service station employee for injuries he sustained after a tire exploded while being mounted on a defective rim which was distributed by General Motors. Despite the fact that General Motors did not manufacture the rim, this court held General Motors' status as a professional vendor of the rim subjected it to the same responsibility as that of the manufacturer.
In the instant case the can of Coke which allegedly contained the roach was canned by Gulf States Canners, Inc., a Mississippi corporation, at its Clinton, Mississippi plant. Gulf States was described as a "cooperative" formed by several local Coca-Cola bottling companies for the purpose of producing canned cokes for distribution by the local bottlers. Coca-Cola Bottling Company of of Shreveport, Inc., a local bottler of Coke in bottles, was one of the participants in forming Gulf States and owns six percent of the stock of Gulf States. One of the officers or directors of Coca-Cola of Shreveport is a director on the board of Gulf States. Coca-Cola of Shreveport is free to buy and does buy canned Coke from other canners but Gulf States sells only to local bottling companies and was not free to refuse to sell to Coca-Cola of Shreveport. According to the claims manager of Coca-Cola of Shreveport, the local bottler does not distribute products for Gulf States but distributes for itself. The cans of Coke manufactured by Gulf States contain an imprint in small letters stating that under the authority of Coca-Cola USA the Coke was canned by Gulf States Canners, Inc., Clinton, Mississippi. Otherwise, the bottled and canned Cokes distributed by Coca-Cola of Shreveport presumably carry the distinctive Coca-Cola label used nationwide.
Under these facts, the local Coca-Cola bottling company, which is a bottler (manufacturer) of soft drinks and is the distributor of Coca-Cola in an area, should be regarded as a manufacturer of all Coca-Cola products it distributes, even though a certain product (the canned Coke in this instance) was not actually canned by the local company but was canned by a company formed by local bottlers for the purpose of providing canned Coca-Cola for distribution by the local bottling companies.
Coca-Cola of Shreveport is in fact a manufacturer of Coca-Cola products and holds itself out as such. Insofar as the consumer in its distribution area is concerned, there is no distinction between bottled and canned Cokes. A manufacturer of soft drinks should be considered as the manufacturer of all of the soft drinks it distributes even though one of its product lines is manufactured by a separate corporation formed for the purpose of supplying the manufacturer with an additional line of products marketed under the same Coca-Cola label. The fact that the label contains *1086 a small print identification of the actual manufacturer is of no consequence.
Because Coca-Cola of Shreveport occupies the position of a manufacturer, it would be solidarily liable with Gulf States, the actual manufacturer of the can of Coke involved in this case. The timely filed suit against one of the solidary obligors interrupted prescription as to the other solidary obligor. LSA-C.C. Art. 1799 (formerly LSA-C.C. Art. 2097); Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La.1985).
Because the issues discussed are dispositive of the appeal, it is unnecessary to discuss the other issues presented by plaintiff's specifications of error.
For the reasons assigned, the judgment of the district court in favor of Gulf States Canners, Inc. sustaining the peremptory exception of prescription and dismissing plaintiff's suit against that defendant is reversed and set aside, and the exception is overruled. The judgment of the district court in favor of Coca-Cola Bottling Company of Shreveport, Inc. granting summary judgment and dismissing plaintiff's suit against that defendant is reversed and set aside, and the motion is overruled. The action is remanded to the district court for further proceedings. Costs of the appeal are assessed against the defendants in solido.
REVERSED AND REMANDED.