708 So.2d 1248 (1998)
Iona MATTHEWS, Individually and on Behalf of Her Two Minor Children, Urick Matthews and Johnathan Matthews.
v.
WAL-MART STORES, INC.
No. 97-CA-0449.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1998.
Thomas P. Anzelmo, Catherine M. Williams, Geoffrey Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for Defendant/Appellant.
John H. Brooks, Gretna, for Plaintiff/Appellee.
Before SCHOTT, C.J., and PLOTKIN and CIACCIO, JJ.
SCHOTT, Chief Judge.
Defendant, Wal-Mart Stores, Inc. has appealed from a judgment in plaintiff's favor for damages she sustained as a result of a fire caused by a defective lamp she purchased from defendant. The issue is whether she is entitled to a judgment as a matter of law when she failed to prove that defendant was the lamp's manufacturer, that defendant held itself out to be the manufacturer, or that defendant knew or should have known that the lamp was defective. We reverse.
Plaintiff purchased the lamp from defendant on January 3, 1994, and took it home. Three days later, there was a fire in her apartment which was caused by a short circuit *1249 in the lamp. Plaintiff testified that nothing on the lamp or the box it came in identified the manufacturer, but it was marked "Made in China." She said the box was not sealed, its inner packaging had been removed, and its cord was loose. She stipulated, however, that there was nothing apparently wrong with the lamp; otherwise, she would not have purchased it.
Defendant's legal responsibility is governed by the Louisiana Products Liability Act, LSA-R.S. 9:2800.51 et seq. That law defines a manufacturer not only as one who literally manufactures a product but also one who labels the product as his own or holds himself to be the manufacturer or who exercises control over the design, construction or quality of the product. R.S. 9:2800.53. None of these elements apply to this case. The lamp was labeled as "Made in China" and there is nothing in the record to suggest that defendant had any control over the lamp's design, construction, or quality.
R.S. 9:2800.53(1)(d) also defines a manufacturer as the seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The statute provides that the alter ego determination is based upon whether the seller has common ownership of or control over the alien manufacturer, whether the seller is involved with the warranty obligation of the manufacturer, whether the seller modifies the product, "or any other relevant evidence." In the present case there is no evidence at all to support the conclusion or even an inference that defendant under this statute is the alter ego of the chinese manufacturer or the lamp.
Plaintiff argues that Chappuis v. Sears, Roebuck & Company, 358 So.2d 926 (La. 1978) supports her position; that the "professional vendor" theory applies to defendant as it applied to Sears in that case. This case was decided ten years before the adoption of the LPLA which establishes exclusive theories of liability for manufacturers for damage caused by their products. R.S. 9:2800.52. Chappuis has been legislatively overruled. On the other hand, such cases as Ferruzzi, USA, Inc. v. R.J. Tricon Co., 93-1591 (La. App. 4 Cir. 9/29/94), 645 So.2d 685 and Baldwin v. Kikas, 93-CA-1739 (La.App. 4 Cir. 4/14/94), 635 So.2d 1324 which applied the LPLA and applied the same priniciples discussed in this case are applicable.
We are not without sympathy for the plaintiff in this case, but we do not make the law. The legislature in adopting the LPLA provided remedies to purchasers of defective products only under certain conditions. Plaintiff argues that defendant is a giant retailer who should be made to bear the responsibility for damage caused by defects in merchandise it sells regardless of its lack of knowledge of such defects, that it is in a position to determine the identity of the manufacturers of products it sells, and that it should not escape liability for a defective product such as the lamp in this case simply because it was not the manufacturer and does not identify the manufacturer.
In the final analysis, plaintiff makes a strong equitable argument that the court should fashion some remedy for her because of her position relative to this retail giant who sold her this Chinese lamp. A court is not in a position to provide a special remedy for an individual plaintiff who cannot bring herself within the ambit of the protection afforded by the LPLA. The court is surely not in the position to hold that any seller of a new lamp made in China is liable for unknown defects. This would subject even the entrepreneur operating a small shop to unlimited products liability. Neither is the court in the position to classify what sellers are liable because of their size as compared to small entrepreneurs. For example, were we to conclude that a "retail giant" is liable in a case such as this, how do we define a retail giant? All of these questions are for the legislature which through committee hearings and debates can make classifications of sellers for products liability purposes based upon a comprehensive consideration of relevant economic and social factors.
Because plaintiff failed to prove entitlement to recovery under the LPLA, the trial court erred as a matter of law by rendering judgment in her favor. Accordingly, the *1250 judgment is reversed and set aside and her case is dismissed at her cost.
REVERSED.
PLOTKIN, J., dissents.
PLOTKIN, Judge, dissenting:
I believe Wal-Mart is liable in this case for the damages sustained by Plaintiff, therefore, I dissent from the majority's resolution of this matter. I would base liability on the Louisiana Product's Liability Act.
Under La. R.S. 9:2800.53(1), the definition of manufacturer, also includes:
(d) a seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is citizen of another country or who is organized under the laws of another country.
This provision establishes a two-prong test designed to specifically include some sellers of foreign goods in the definition of manufacturer. It was adopted in response to the growing practice of domestic distributors and retailers marketing foreign goods. Frank Maraist, Louisiana Tort Law § 15-15 (1996). In order for a seller to fall under the definition of "manufacturer" under this provision, the seller must be importing or distributing a product for resale that was manufactured outside of the United States. In our case, there was evidence that the lamp was labeled, "Made in China." Also, at oral argument, counsel for Wal-Mart reiterated several times that Wal-Mart did not know who the manufacturer was because the lamps were imported from Asia. The first prong of the test has been satisfied because Wal-Mart imported the lamps from abroad for distribution to its retailers and the ultimate resale to its customers.
The second prong of the test is that the seller must be the "alter ego" of the alien manufacturer. The legislature furnished a nonexhaustive list of what the court should consider while making this determination. This list includes "any relevant evidence." Here, I believe that the evidence clearly demonstrated that the lamp itself was not labeled with the name of any manufacturer, nor was the package in which the lamp was contained labeled. This fact is highly "relevant evidence" because, essentially, Wal-Mart was creating an assumption on the part of its customers that it was the manufacturer of the lamp.[1] If Wal-Mart wanted its customers to know that it did not manufacture this lamp, it could easily have labeled the product.
Not surprisingly, considering the recent trend toward manufacturing operations moving abroad to avoid costs, more and more products must be imported by retailers. This importation creates a vacuum where injured parties are unable to obtain relief because retailers are shielded simply by pointing the finger at the foreign, unknown and untouchable manufacturer. Even if the foreign manufacturer's identity is known, the injured party may not be able to gain jurisdiction over it or enforce a judgment against it. John N. Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565, 575 (1989). Plaintiff in this case is not even able to attempt to gain jurisdiction over the manufacturer because of Wal-Mart's inability to identify the manufacturer. These facts justify holding the seller liable as the manufacturer. Imposition of liability upon retailers who sell foreign goods is also justified on the ground that they are in the position to exert pressure on their foreign manufacturers to increase the safety of their products if they hope to continue exporting them to the United States.
*1251 Moreover, support for this proposition can be found in the law of redhibition. The seminal case, Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377, 380-81 (1972), created the theory of the de facto manufacturer. In that particular case, the court found that the actions of the distributor created a situation whereby it held itself out to be the manufacturer. Subsequent cases following this line of reasoning were determined on a case-by-case basis according to their facts. See Chenniliaro v. Kaufman & Broad Home Systems of Louisiana, Inc., 93-1126 (La.App. 1 Cir. 1/19/94), 636 So.2d 246; Buteau v. Leleux, 591 So.2d 1261 (La.App. 3rd Cir.1991); Chastant v. SBS-Harolyn Park Venture, 510 So.2d 1341, 1344 (La.App. 3rd Cir.1987) (Holding out a product in any significant manner as one's own is likely to earn one the label "manufacturer.")
This line of reasoning is also consistent with the recent national trend toward holding sellers strictly liable in products liability cases. In fact, the American Law Institute has taken this approach in Restatement (Third) of Torts: Products Liability (proposed final draft 1997). Currently, proposed § 1 states: "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." This rule provides that all commercial sellers and distributors are strictly liable for the defects in the products they sell. It is not necessary that the retailer know of the defect in the product. Also, it is immaterial whether or not the retailer is in a position to prevent the defects. This definition clearly includes nonmanufacturing sellers such as Wal-Mart. This approach eradicates the problem of retailers being shielded from liability when they sell foreign goods produced by manufacturers that are unattainable, either because of lack of service of process or lack of identity.
The law should not allow retailing giants like Wal-Mart, who thrive on their ability to buy foreign-made products cheaply, to shield themselves from liability simply by stating that they cannot identify the manufacturer. With so little manufacturing occurring in this country, injured parties will be left with virtually no remedy if we allow this to occur. Thus, if the retailer is unable to identify the manufacturer in a case like this, the retailer should be held liable for damages as the "alter ego" of the manufacturer. Retailers should be imputed with the knowledge of whose products they are selling. To exonerate the retailer and leave no remedy is to wound the injured party again.
Accordingly, I dissent from the majority opinion absolving Wal-Mart from responsibility.
NOTES
[1] Also, under La. R.S. 2800.53(1)(a), Wal-Mart's silence could easily be interpreted as otherwise holding itself out to be the manufacturer of the lamp.