FRANK TONY MARTIN

VERSUS

PHAM LE BROTHERS, LLC D/B/A SUPER
SAVER DISCOUNT, INDIA IMPORTS, LLC
D/B/A INTERNATIONAL WHOLESALE CLUB
AND SENECA SPECIALTY INSURANCE
COMPANY

NO. 21-C-159

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 786-245, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

September 22, 2021

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Hans J. Liljeberg, and John J. Molaison, Jr.

**WRIT APPLICATION GRANTED; JUDGMENT**
**REVERSED ON APPARENT MANUFACTURER**
**ISSUE AND SUMMARY JUDGMENT GRANTED**
**ON SAME ISSUE**
    **HJL**
    **SMC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/RELATOR,
INDIA IMPORTS, LLC D/B/A INTERNATIONAL WHOLESALE CLUB
David A. Strauss
Robin D. Cassedy

COUNSEL FOR PLAINTIFF/RESPONDENT,
FRANK TONY MARTIN
Stephen M. Huber
Charles M. Thomas
Logan E. Schonekas

COUNSEL FOR DEFENDANT/RESPONDENT,
PHAM LE BROTHERS, LLC D/B/A SUPER SAVER DISCOUNT
Timothy W. Hassinger

**LILJEBERG, J.**

Defendant/Relator, India Imports, LLC d/b/a International Wholesale Club ("International Wholesale Club"), filed a writ application requesting that this Court reverse the trial court's denial of its motion for summary judgment seeking to dismiss the claims filed against it by plaintiff, Frank Tony Martin. Mr. Martin alleges that International Wholesale Club is liable to him as the manufacturer/seller of a disposable lighter that allegedly exploded and caused him to sustain severe burns to his face and upper body. In its writ application, International Wholesale Club argues that the trial court erred by finding that genuine issues of material fact exist as to whether it can be considered an apparent manufacturer of the disposable lighter under the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et. seq.* ("LPLA"). For reasons explained more fully below, we find that pursuant to the undisputed facts and applicable law, International Wholesale Club did not hold itself out as a manufacturer of the disposable lighter and therefore, is not liable to Mr. Martin as an apparent manufacturer. Therefore, we grant International Wholesale Club's writ application, reverse the trial court's ruling denying summary judgment on the issue of whether International Wholesale Club can be held liable as an apparent manufacturer and grant International Wholesale Club's motion for summary judgment on this issue.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Martin alleges that on September 2, 2017, he was lighting a cigar with an MK lighter he purchased from a convenience store owned by co-defendant, Pham Le Brothers, LLC d/b/a Super Saver Discount ("Super Saver"). He claims

---

[1] Mr. Martin alleges that International Wholesale Club and the co-defendants are liable to him as manufacturers and non-manufacturing sellers. In its motion for summary judgment, International Wholesale Club also argued that it has no liability as a non-manufacturing seller of the disposable lighter. Though the trial court's written judgment did not grant any part of the summary judgment motion, International Wholesale Club states in its writ application that its alleged liability as a non-manufacturing seller is not an issue for consideration by this Court. Based on this statement by International Wholesale Club, we limit our analysis to its liability as an apparent manufacturer and do not address its alleged liability as a non-manufacturing seller.

21-C-159                                                                 1

the lighter released flammable fluid and unexpectedly exploded, catching his shirt and upper body on fire. Mr. Martin suffered severe burns to his face and upper body.

On or about August 1, 2018, Mr. Martin filed a petition for damages against the convenience store, Super Saver, its insurer, Seneca Specialty Insurance Company, and relator, International Wholesale Club, the wholesaler that allegedly sold the MK lighter to Super Saver. Mr. Martin specifically alleges that on or about March 9, 2017, Super Saver purchased a case containing 1000 MK lighters from International Wholesale Club and the case contained the defective lighter. In January 2021, Mr. Martin filed a First Supplemental and Amending Petition for Damages ("Supplemental Petition"), adding two additional defendants, Ravi's Import Warehouse ("Ravi's") and Arrow Lighter, Inc. d/b/a MK Lighter, Inc. and MK Lighter Company ("MK Lighter Company"). Mr. Martin alleges that International Wholesale Club purchased the MK lighters from Ravi's located in Dallas, Texas, and the MK Lighter Company manufactured the MK lighter at issue. Mr. Martin claims that all of the defendants are liable to him as actual and apparent manufacturers, as well as non-manufacturing sellers of the MK lighter. He asserts claims for construction and composition defects, design defects and for providing inadequate warnings regarding these alleged defects under the LPLA, as well as under theories of redhibition and negligence.

Mr. Martin does not claim that International Wholesale Club is the actual manufacturer of the MK lighter. Rather, this writ application concerns the issue of whether International Wholesale Club is liable to Mr. Martin as an apparent manufacturer of the MK lighter, that is whether International Wholesale Club labeled the lighter as its own or otherwise held itself out as a manufacturer of the MK lighter. The pertinent facts are largely undisputed. In his deposition, International Wholesale Club's owner, Hiren Shah, testified that his company

operates as a wholesaler that sells products to 800 to 900 convenience store customers located in Louisiana and Mississippi. Mr. Shah explained that International Wholesale Club sells most products found in convenience stores, with the exception of alcohol and gasoline.

In 2017, when the incident at issue occurred, International Wholesale Club purchased MK lighters from Ravi's in packs of 50 lighters referred to as a "brick" of lighters.[2] International Wholesale Club resold the lighters to convenience stores by the brick or by the case.[3] Mr. Shah testified that International Wholesale Club did not make any changes to the bricks of lighters prior to reselling them to its retail customers. Neither the lighters, nor the packaging for the bricks of lighters, contain any reference to International Wholesale Club. The metal part at the top of the lighter contain the initials "MK" etched in the metal. The packaging/display case from which the lighters are sold includes the description "MK LIGHTER" in large letters on multiple sides.

Mr. Shah further testified that International Wholesale Club does not solicit customers and obtains new customers mostly by word of mouth. With respect to its marketing efforts, Mr. Shah explained that International Wholesale Club has one salesperson, Himu Vhargushastri. Mr. Vhargushastri testified that he regularly visited 80 to 100 convenience stores a week to accept orders, which he then forwarded to International Wholesale Club's warehouse. Mr. Shah also explained that International Wholesale Club publishes an extensive catalog of all its products approximately once a year. International Wholesale Club sends the catalogs to customers with their deliveries or they are available at International Wholesale Club's warehouse.

---

[2] Ravi's is a wholesaler that sells to other wholesalers, as well as directly to convenience stores.

[3] A case contains 20 bricks of lighters for a total of 1,000 lighters.

Mr. Shah also explained that International Wholesale Club sells products, including MK lighters, to its customers from its warehouse located in Metairie. During his deposition, he described it as a "cash and carry" similar to a membership club "like a Sam's Club." He explained that International Wholesale Club sold MK lighters from their Metairie location by the brick in the same packaging they are received without any changes or alterations. Super Saver's owner, Bin Pham, testified that he usually placed his orders with International Wholesale Club through Mr. Vhargushastri and only went to International Wholesale Club's warehouse if the convenience store was short on a popular item.

On or about December 10, 2020, over two years after Mr. Martin filed his original petition, International Wholesale Club filed its motion for summary judgment seeking the dismissal of all of Mr. Martin's claims against it. In its summary judgment motion, International Wholesale Club argued that it is not liable for any claims under the LPLA because, as a wholesaler that supplies products to local convenience stores, it is not a manufacturer of the MK lighter. It argued that it has no knowledge regarding the design and construction of MK lighters and made no changes to them before selling them to the convenience stores. It further argued that it does not label the MK lighters as its own or otherwise hold itself out as the manufacturer of the MK lighter. It asserted that neither the lighters, nor the packaging in which the lighters are contained and displayed, have any labels referring to International Wholesale Club. It further argued that International Wholesale Club never received any complaints from customers regarding MK lighters and it was not aware of any defects or other problems with the lighters.

In opposition, Mr. Martin argued that International Wholesale Club is liable as an apparent manufacturer under the LPLA and is presumed to have known of the defects in the MK lighter, because it held itself out as a manufacturer of the

MK lighter. Mr. Martin bases this allegation on a page in the catalog of products International Wholesale Club published for its convenience store customers. The page at issue contains 24 separate boxes with pictures of different lighters and related products. Under each picture, there is a bar code and number, as well as a brief description of the product, *i.e.* "Fujima Torch L940 Angle 20ct," "Bic Lighter Plain 50ct," "Lighter Cheap 50ct." Each picture also contains the initials "IWC" in the top right corner of the box, which Mr. Shah confirmed stands for International Wholesale Club.

Mr. Martin argues that the picture of lighters with the description "Lighter Cheap 50ct" represented the MK lighters. He notes that Mr. Shah and Mr. Vhargushastri testified that the only cheap lighters International Wholesale Club sold at the time of the incident in 2017 were MK lighters. Mr. Martin claims genuine issues of material fact exist as to whether International Wholesale Club held itself out as a manufacturer of these lighters because it chose not to include the manufacturer name "MK" next to the picture of the lighters, as it did with the Fujita and BIC lighters on the page, and the only identifying information next to the picture are the initials "IWC."

In reply, International Wholesale Club argued that a picture on one page in its catalog is not sufficient to defeat summary judgment when it did not label the actual lighter with its name and did nothing to give the impression that it manufactured the lighters. International Wholesale Club argued that MK lighters and the packaging are only labeled with "MK" and "MK LIGHTER" and did not refer to International Wholesale Club in any way. International Wholesale Club argued that the photograph at issue in the catalog depicts a lighter, but it is not specifically an MK lighter.[4] Mr. Shah and Mr. Vhargushastri explained in their

---

[4] The brand or manufacturer of the "cheap lighters" is not legible in the picture provided with the writ application.

deposition testimony that International Wholesale Club did not specify a particular brand for the cheap lighters pictured in the catalog because that category of product was intended to encompass any lighters below the price point of Bic lighters, which is a more expensive product. They both testified that at the time of the incident in 2017, MK lighters were the only brand of cheap lighters International Wholesale Club was selling and that International Wholesale Club's customers requested MK lighters by name. They further explained that International Wholesale Club used a generic or vague description in the catalog for the cheaper lighters to allow the possibility of selling different brands of cheap lighters if necessary to meet customer requests.

International Wholesale Club also noted that all of the lighters pictured on the catalog page, including those containing the brand names BIC and Fujima, include the letters "IWC" in the upper right hand corner of each box, making it unlikely that the letters would create the impression that it manufactured cheap lighters. International Wholesale Club finally argued that Mr. Martin did not provide any evidence that he ever saw the catalog or the specific page with the picture and description at issue.

The trial court held a hearing on International Wholesale Club's motion for summary judgment on February 9, 2021. After listening to argument, the trial court denied the motion and in its oral reasons stated that questions of material fact existed on the following grounds:

> And, as it relates to the India Imports' motion for summary judgment, the Court is likewise denying the motion for summary judgment based on the fact that the Court believes there are questions of material fact as to whether or not under Louisiana Products Liability Law, that International Wholesaler (sic) is potentially considered a manufacturer in light of their own marketing materials that specifically list the lighter not as an MK lighter, but as an IWC, that at least has the IWC insignia next to it. This is marketing material specifically produced by IWC for the sale of these particular lighters and they market it under IWC. That, in this Court's mind again, raises

a question of fact as to whether or not IWC is considered the manufacturer of these lighters under Louisiana law.

In its written judgment signed on March 3, 2021, the trial court ruled that International Wholesale Club's summary judgment motion was denied due to questions of material fact as to whether International Wholesale Club "is considered a manufacturer under the Louisiana Products Liability Act by holding itself out to be an apparent manufacturer of the MK lighters."

International Wholesale Club filed a timely writ application with this Court, and after reviewing its arguments and Mr. Martin's opposition, this Court issued an order docketing the matter for additional briefing and argument pursuant to La. C.C.P. art. 966(H).[5]  This Court specifically requested that the parties address the application of the following standard set forth in a recent federal court decision, *Pablovich v. Rooms to Go Louisiana Corp.*, 20-617, 2021 WL 1401759, p. 4 (E.D. La. Apr. 14, 2021), to determine whether a seller held itself out as a manufacturer:

> 'Whether a holding out has occurred must be judged from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase.' *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 896 (5th Cir. 2010) (*quoting Hebel v. Sherman Equip.*, 92 Ill. 2d 368, 375, 442 N.E.2d 199, 203 (1982)).

We also requested that the parties address how the decision in *Frierson v. Spanset, Inc.*, 09-3153, 2010 WL 11537999 (E.D. La. Aug. 17, 2010), discussed more fully below, may or may not apply to this case.

## LAW AND DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact.  *Bell v. Parry*, 10-369 (La. App. 5 Cir. 11/23/10), 61 So.3d 1, 2.  The summary judgment procedure is

---

[5] La. C.C.P. art. 966(H) provides:

> On review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument.

favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Under La. C.C.P. art. 966(D)(1), the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* The nonmoving party must then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* If the nonmoving party fails to do so, summary judgment should be granted. *Babino v. Jefferson Transit*, 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.

In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Larson v. XYZ Insurance* Co., 16-745 (La. 5/3/17), 226 So.3d 412, 416. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id.* A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.*

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Ruel v. Dalesandro,* 18-243 (La. App. 5 Cir. 7/9/19), 276 So.3d 626, 632. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Breaux v. Fresh Start Properties, L.L.C.*, 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852.

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. In addition to the entity that actually manufactures a product, the LPLA defines a manufacturer as one "who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. R.S. 9:2800.53(1). This provision is commonly referred to as the apparent manufacturer doctrine. This doctrine allows a plaintiff to hold a seller or distributor liable for injuries caused by a product defect, when the seller leads a reasonable consumer to believe that it is the manufacturer of the product. *See Meunier v. Home Depot U.S.A., Inc.*, 19-12141, 2021 WL 795878, p. 3 (E.D. La. May 2, 2021), *citing Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010); *Frierson*, p. 3, 2010 WL 11537999.

In the supplemental briefing requested by this Court, both Mr. Martin and International Wholesale Club agree that under the apparent manufacturer doctrine set forth in the LPLA, a court determines whether a seller held itself out as the manufacturer of the product by considering the viewpoint of the purchasing public and in light of the circumstances as of the time of purchase as set forth in *Pablovich*, *supra.* After reviewing a broad range of cases decided by Louisiana state and federal courts addressing the apparent manufacturer doctrine, we agree.

As explained above, Mr. Martin contends that International Wholesale Club is liable as an apparent manufacturer, not because it placed a label identifying the company in any way on the product, but because it placed its initials "IWC" on the top corner of the picture of a brick of lighters identified as "Lighter Cheap 50ct" in a catalog provided to its customers. Mr. Martin does not claim that he saw the catalog at issue at Super Saver or at any time prior to the incident. Therefore, the evidence does not indicate that International Wholesale Club held itself out as a manufacturer of the MK lighter when analyzing the circumstances at the time Mr. Martin purchased the MK lighter at Super Saver.

In his supplemental memorandum filed with this Court, however, Mr. Martin expands his arguments and contends that when considering the evidence from the purchasing public's view, genuine issues of material fact exist as to the apparent manufacturer issue because International Wholesale Club sold defective lighters that 1) included the brand name "MK Lighter" and did not identify the Chinese manufacturer, Zhuoye Lighter Company, Ltd.; 2) marketed the lighters in a catalog as their own cheap lighters, and 3) distributed the catalogs out to the public at its "brick and mortar store" where it sold MK lighters. Mr. Martin further cites to *Chevron,* 688 F.3d at 896, for its finding that "[a]s a general rule, it takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark."

We first address Mr. Martin's argument that a genuine issue of material fact exists because the MK lighter does not identify the actual manufacturer, Zhuoye Lighter Company, Ltd. Before addressing the caselaw Mr. Martin cites to in support of this argument, we must first consider that Mr. Martin did not introduce any admissible evidence regarding a manufacturer of the lighter other than MK Lighter Company. We recognize that in his initial petition, Mr. Martin alleges that Zhuoye Lighter manufactured that MK lighter in China and that International Wholesale Club was an affiliate that distributed the MK lighter. When Mr. Martin filed his Supplemental Petition, however, he removed all references to Zhuoye Lighter and replaced them with allegations naming MK Lighter Company as the manufacturer of the MK lighter. Mr. Martin did not allege that International Wholesale Club is an affiliate of MK Lighter Company, and did not re-allege, incorporate or adopt any allegations from the original petition into his

Supplemental Petition. As a result, the Supplemental Petition is a superseding petition that completely replaced all allegations contained in the original petition.[6]

Mr. Martin also argues that the present matter falls within a line of cases, such as *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926 (La. 1978), where the product itself does not identify the actual manufacturer. In *Chappuis*, a Sears Craftsman hammer chipped as the plaintiff was driving a nail and the metal fragment lodged in the plaintiff's eye. The hammer was manufactured by Vaughan and Bushnell to Sears' specifications, with Sears' name and its "Craftsman" trademark on the handle. Based on these facts, the Supreme Court determined that Sears held the product out as its own and also recognized that due to the "size, volume and merchandising practices of Sears," it was within the class of professional vendors presumed to know the defects in the products they sell. *Id.* at 930. *Chappuis* is completely distinguishable from the present matter because the MK lighter contains the name of the manufacturer as alleged by Mr. Martin, the lighter did not include International Wholesale Cub's name or brand, the company did not dictate any specifications for the lighter or its labeling, and Mr. Martin presented no evidence to establish that International Wholesale Club is a professional vendor of MK lighters.

Even if evidence existed regarding another manufacturer in addition to MK Lighter Company, this issue is not relevant to the determination of whether International Wholesale Club held itself out as the manufacturer. Mr. Martin has not alleged that International Wholesale Club has any relationship or connections to MK Lighter Company or any other manufacturer. Mr. Martin does not cite to any law or jurisprudence requiring a distributor or seller to disclose the name of all

---

[6] Louisiana courts have acknowledged that the wording used in an amending petition may have the effect of superseding and replacing the allegations in an original petition. *See Gereighty v. Domingue*, 17-339 (La. App. 5 Cir. 5/30/18), 249 So.3d 1016, 1023, fn. 4 (finding that allegations in earlier reconventional demand were abandoned when defendant filed a new reconventional demand that replaced all allegations and did not re-allege or incorporate any allegations from prior pleadings); *see also Santiago v. Tulane University Hospital and Clinic*, 12-1095 (La. App. 4 Cir. 4/24/13), 115 So.3d 675, 685-86.

entities involved in manufacturing a product to avoid liability as an apparent manufacturer. This is simply not required under the LPLA. The inquiry is whether International Wholesale Club labeled the product as its own or held itself out as a manufacturer by engaging in actions that would lead a reasonable consumer to believe it was a manufacturer. Furthermore, Mr. Martin presents no evidence that International Wholesale Club had any knowledge regarding the name of a manufacturer other than MK lighter.

Mr. Martin also argues that this Court should treat the failure to list the manufacturer's name next to the picture in the catalog as equivalent to the factual circumstances considered in cases where the actual product does not bear the manufacturer's name. Consequently, Mr. Martin urges this Court to apply the observation stated in *Chevron*, *supra*, that "it takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark," to the present matter. The two Louisiana cases the *Chevron* court cites to in support of its observation, however, involve situations where the product itself contained absolutely no reference to the manufacturer. *See Louviere v. Ace Hardware Corp.*, 05-259 (La. App. 3 Cir. 11/2/05), 915 So.2d 999, 1002 (genuine issue of material fact exists on manufacturer issue where price tag includes seller's name with no other labels on the product to indicate the identity of the manufacturer); *Cooke v. Fairmont Hotel Co.,* 90-4759 (E.D. La. 2/5/93), 1993 WL 35146 (shipping labels with wire supplier's name and brief description of product precluded summary judgment where the wire was not labeled with the name of the manufacturer).

Accordingly, this matter does not fall within the line of cases where the product itself contains no reference to the manufacturer, therefore requiring "very little to create a jury issue." Rather, this Court is presented with the opposite scenario because the MK lighter clearly displays the manufacturer's initials "MK"

at the top, the packaging in which the lighters are sold state "MK LIGHTER" on several sides, and there is no reference to International Wholesale Club on the product or the packaging. The pertinent inquiry for this Court, therefore, is whether in light of these circumstances, the picture in the catalog creates a genuine issue of material fact as to whether International Wholesale Club held itself out as a manufacturer?

Not surprisingly, we found few cases where courts held a seller or distributor liable when the product itself displayed the manufacturer's name or brand and did not contain any reference to the distributor or seller. The most prominent case we identified is, *Chevron*, *supra*, which involved defective bolts. The bolts contained the initials "OF" for the manufacturer, Oriental Fastener Co. Though the distributor, Lone Star, did not manufacture the defective bolts and the bolts did not include Lone Star's name or mark, the court determined that the jury did not err in holding Lone Star liable as a manufacturer because the evidence indicated Lone Star was "'well-known' as a bolt manufacturer" and did not inform its customer that the bolts it sold were not its own. 604 F.3d at 898. Furthermore, the shipping box included Lone Star's mark and the packing slip accompanying the bolts stated they were either manufactured or distributed by Lone Star. *Id.* at 891.

In *Media Production Consultants v. Mercedes-Benz of North America, Inc.*, 262 So.2d 377, 380-81 (La. 1972), the court held a Mercedes-Benz distributor liable as a manufacturer because the evidence indicated that the distributor led American consumers to believe the distributor was the manufacturer. The Louisiana Supreme Court based this determination on the fact the distributor had exclusive rights to market the cars in the United States, and for selling, servicing and establishing franchise dealerships. The distributor also inspected, adjusted and prepared vehicles for sale prior to sending them to dealerships and included its name in the owner's manuals and service policies provided to purchasers of the

vehicles. *Id.* Furthermore, in *Rutherford v. Coca–Cola Bottling Co. of Shreveport*, 501 So.2d 1082 (La. App. 2nd Cir.1987), a consumer brought an action against the local Coca-Cola bottler in Shreveport for injuries allegedly suffered after finding a bug in a canned soft drink. The can's label contained the names of the national company, Coca-Cola, USA, and the cannery of the beverage, but not the name of the local bottler, which was the distributor of all Coca-Cola products in Shreveport. Nevertheless, the local bottler was held liable for the defect because the evidence indicated that it held itself out as the manufacturer of Coca-Cola products in the Shreveport area. *Id*. at 1085-86.

The common denominator in all three of these cases where the product itself contained the actual manufacturer's name or brand, and no reference to the distributor, is that when viewed from the perspective of the purchasing public, the courts found liability based on evidence that the distributor was also an actual manufacturer of a similar product or evidence existed that the general public in the area perceived the distributor to be a manufacturer of the product. There is no evidence to support either of these scenarios in the present matter.

Because he did not see the catalog page at issue, Mr. Martin further argues that this Court should not consider the circumstances as of the time of his purchase as instructed by the jurisprudence cited above, but rather the Court should consider all possible point of sale scenarios along the chain from the manufacturer to the eventual consumer that uses the MK lighter. Based on this alternative analysis, he contends that a genuine issue of material fact exists because the catalog was available at International Wholesale Club's warehouse and it sold the MK lighters to the general public from this location.

First, after thoroughly reviewing the record presented by the parties, we find no evidence that International Wholesale Club sold individual lighters to the general purchasing public from its warehouse in Metairie. Mr. Shah and Mr.

Vhargushastri both testified that International Wholesale Club's customers are retail convenience stores, not the general public. Mr. Martin contends that the fact International Wholesale Club operates a "cash and carry" business similar to Sam's Club indicates that it sells to the general purchasing public. However, this assumption is contrary to the deposition testimony establishing that International Wholesale Club sells lighters by the brick of 50 Mk lighters from the warehouse, not on an individual basis. Mr. Shah further testified that International Wholesale Club produced the catalog for its convenience store customers, not the general purchasing public. Also, though the catalog was available at the warehouse, Mr. Martin did not present any evidence indicating the catalog was provided to customers with each sale that occurred at the warehouse. He also failed to provide any evidence that any convenience store owners or operators believed International Wholesale Club manufactured lighters.

Second, after reviewing relevant caselaw, Louisiana courts do not generally consider the factual circumstances at issue when a distributor sells to another retailer higher up in the chain of sales in order to determine whether the distributor held itself out as a manufacturer. Instead, as indicated by the numerous cases outlined above, courts review the circumstances at issue with respect to the person or entity consuming or using the product at issue. In fact, in *Frierson*, *supra*, the court recognized that under the LPLA, in order to find a distributor held itself out as a manufacturer, there must be some evidence that a ***consumer*** could believe the distributor was a manufacturer based on information included with the product at the point of sale. *Frierson*, p. 3, 2010 WL 11537999.

*Frierson* is also similar in that the court considered the issue of whether a marketing brochure created a genuine issue of material fact on the apparent manufacturer issue. The plaintiffs in *Frierson* alleged that Mr. Frierson was injured when he was attempting to secure cargo on his work truck with a winch bar

that unexpectedly broke. The winch bar was manufactured by Peak Power Products[7] and distributed by the defendant, Spanset, Inc. to a Truckpro auto parts store. Truckpro in turn sold the winch bar to J&S Trucking, Mr. Frierson's employer. The plaintiffs filed suit against Spanset under the LPLA alleging that the winch bar was defective and that Spanset was liable as a manufacturer.

The plaintiffs moved for summary judgment on the issue of whether Spanset held itself out as an apparent manufacturer under the LPLA based on several pieces of evidence. First, Spanset advertised the winch bar, as well as other products it sold, in a brochure, and the Spanset name appeared on the page where the winch bar appeared. Second, plaintiffs alleged that Spanset's name was on the box in which Spanset sent the bars to its vendors. Third, some of Spanset's vendors, who sold the winch bar, advertised it as a Spanset product. Finally, though the winch bar did not bear any identifying marks regarding the manufacturer, Peak, or the distributor, Spanset, Peak did mark the winch bar with an internal control number "AB 6361," as requested by Spanset. The bar was also marked with the word "China."

The *Frierson* court first considered whether a brochure which contained Spanset's name on the same page as the product established that Spanset was holding itself out as a manufacturer of the winch bar. The court explained that it could not locate "any case finding that the content of a distributor's brochure, like the one in this case, contributed to a finding that the distributor was a 'manufacturer' under the LPLA." *Id.* at p. 2. The closest case the *Frierson* court located was *Bush v. J.C. Penney Co.*, 99-2692, 2002 WL 1160083, p. 2 (E.D. La. May 29, 2002), where the court found a genuine issue of material fact existed as to whether J.C. Penney held itself out as a manufacturer because the instructions that accompanie[d] the lamp included language stating, "'[c]ongratulations on your

---

[7] The full name of the manufacturer is Peak Power Products Ningbo Peak Industrial Company Limited.

21-C-159                                      16

new JCPenny [ ] floor lamp!'" The *Frierson* court emphasized that the "fact that the instruction was included with the product was key to the court's finding, and makes it distinguishable from the instant case." *Id.*

The *Frierson* court went on to find that a review of Louisiana cases applying the LPLA indicated that in order to conclude that a distributor held itself out as a manufacturer, the plaintiff must present evidence of information included with the product at the point of sale that could lead a *consumer* to believe the distributor was a manufacturer:

> A review of cases applying the LPLA makes it clear that in order to find that a distributor held itself out as a manufacturer, there must be some evidence that a consumer could believe the distributor was a manufacturer based on information included with the product at the point of sale. *See Allstate Ins. Co. v. Fred's, Inc.*, 44,508 (La. App. 2 Cir. 3/17/10); 33 So.3d 976, 978; *Louviere v. Ace Hardware Corp.*, 05-259, p. 1 (La. App. 3 Cir. 11/2/05); 915 So.2d 999; *Peterson v. G.H. Bass and Co.*, 97-2843, p. 1 (La. App. 4 Cir. 5/20/98); 713 So.2d 806; *Bush*, 2002 WL 1160083, at *2; *see also Matthews v. Wal-Mart Stores, Inc.*, 97-0449, p. 2 (La. App. 4 Cir. 3/11/98); 708 So.2d 1248 ("Plaintiff testified that nothing on the lamp or the box it came in identified the manufacturer."). Spanset observes persuasively that if a distributor is deemed a "manufacturer" of a product under the LPLA simply because its logo appears in a brochure advertising that product, then every distributor would be a "manufacturer." There is no evidence here that Spanset's brochure was included with the winch bar at the point of sale. The Spanset brochure is therefore not relevant to whether it held itself out as a manufacturer of the winch bar.

*Id.* at pp. 2-3.

The *Frierson* court also determined that the boxes used to ship the winch bars to vendors were not relevant because the plaintiffs did not present evidence indicating that the winch bars were resold in the same box to consumers and therefore, available to the consumer at the point of sale. *Id.* at p. 3. The court further determined that the vendors' actions in advertising the winch bar as a Spanset product were not relevant to determining whether Spanset held itself out as a manufacturer, unless the vendor's actions were directed by Spanset. *Id.* at p. 4. Finally, the court found that even though Spanset directed Peak to place a control

number on the winch bars, the evidence did not support a claim that Spanset was a manufacturer under the LPLA because the control number did not contain Spanset's own name or logo. The court reached the conclusion that the control number was irrelevant because it did not include information that would lead a reasonable consumer to believe Spanset was the manufacturer of the winch bar. *Id.*

We recognize the *Spanset* case was in a different procedural posture because the trial court was considering whether to grant summary judgment in favor of the plaintiffs on the apparent manufacturer issue. However, we find the *Spanset* court's analysis of the information available to the *consumer* of the product at the time of sale to be instructive to the circumstances at issue in the present matter. There is simply no evidence to indicate that that alleged catalog page created for International Wholesale Club's convenience store customers was available at the time consumers, such as Mr. Martin, were purchasing MK lighters and led reasonable consumers to believe International Wholesale Club was a manufacturer of MK lighters. We further recognize that all of the lighters pictured on the page contained the initials IWC next to them.

Based on the foregoing, we find that the catalog page at issue does not create a genuine issue of material fact as to International Wholesale Club's status as an apparent manufacturer. Accordingly, we grant International Wholesale Club's writ application, reverse the trial court's ruling denying summary judgment on the issue of whether International Wholesale Club can be held liable as an apparent manufacturer and grant International Wholesale Club's motion for summary judgment on this issue.

**WRIT APPLICATION GRANTED; JUDGMENT REVERSED ON APPARENT MANUFACTURER ISSUE AND SUMMARY JUDGMENT GRANTED ON SAME ISSUE**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 22, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_CURTIS B. PURSELL_
CLERK OF COURT

## 21-C-159

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
DAVID A. STRAUSS (RELATOR)          ROBIN D. CASSEDY (RELATOR)          CHARLES M. THOMAS (RESPONDENT)
LOGAN E. SCHONEKAS (RESPONDENT)     STEPHEN M. HUBER (RESPONDENT)       TIMOTHY W. HASSINGER (RESPONDENT)

**MAILED**
NO ATTORNEYS WERE MAILED